STAHL, Circuit Judge.
Petitioner Rosa Maria Villalta-Martinez ("Villalta-Martinez") seeks our review of an order of the Board of Immigration Appeals ("BIA") denying her applications for asylum, withholding of removal, and protection under the Convention Against Torture Act ("CAT"). After careful consideration, we deny the petition for review.
I. Facts & Prior Proceedings
We recite here the relevant factual background. On May 8, 2015, Villalta-Martinez, a citizen of El Salvador, illegally entered the United States. On May 9, 2015, she was apprehended by Border Patrol Agents, charged under 8 U.S.C. § 1182(a)(6)(A)(i), and released on her own recognizance. Villalta-Martinez admitted to her removability, and thereafter, filed *22 applications for asylum, withholding of removal, and protection under the CAT, claiming she was persecuted, and faced future persecution, at the hands of Salvadorian gang members, on account of her family membership.[1]
Villalta-Martinez was the only witness to testify in support of her applications before the Immigration Judge ("IJ"). She provided the following information: From 2012-2015, while in El Salvador, she was in a relationship with Ever Eliseo Garcia-Linares ("Garcia"). She became pregnant with Garcia's child and, although she moved into an apartment with Garcia, the couple never married.
Garcia owned a chain of stores in El Salvador. The Marasalvatrucha gang demanded money from Garcia on a weekly basis. Due to these extortion demands, Garcia left El Salvador with the intent to move to Canada; however, he was apprehended in the United States for illegal reentry, having previously been deported.[2]
During her relationship with Garcia, Villalta-Martinez worked in one of his stores. She testified that after Garcia left El Salvador, on at least five separate occasions, gang members came to the store that she worked at, put a gun to her head, and demanded money. As a result, Villalta-Martinez moved to another store to work,[3] in hopes of avoiding trouble with the gang, but the same thing happened. She testified that the gang members came to that store and demanded $2,000. A gang member told her that if she did not pay, he would pull the unborn child from her womb, cut her, and rape her.
After receiving this threat, Villalta-Martinez obtained $3,000 from an aunt, who also resided in El Salvador, in order to travel to the United States. Villalta-Martinez testified that "she was afraid to return to El Salvador because gang members would take reprisals because she did not comply with their demands for money."
The IJ credited Villalta-Martinez's testimony as true. Nonetheless, the IJ found that Villalta-Martinez: (1) failed to establish that she suffered persecution in El Salvador; and (2) failed to establish that she was persecuted on account of her family membership with Garcia. The IJ explained that "the evidence was not that [Villalta-Martinez] was targeted because of Mr. Garcia, but that she was targeted by gangs and each and every time because they wanted money. The respondent has not established that one of the reasons she was targeted was because of her relationship with Mr. Garcia."
The BIA affirmed the IJ's denial and reasoning. The BIA explained:
[E]ven if [Villalta-Martinez] is considered to be in a familial relationship with a man with whom she was in a romantic relationship and with whom she had a child, the respondent has not established a nexus between her past and future fear of harm by gang members and her familial relationship to the man. The record *23 reflects that the respondent was the victim of extortion and that she continues to fear future criminal activity.
Because Villalta-Martinez could not meet her burden for asylum, the BIA determined that "she has also not satisfied the higher standard of a clear probability of persecution" as required for the withholding of removal.
II. Discussion
In order to qualify for asylum, an applicant must demonstrate that she has experienced past persecution or has a well-founded fear of future persecution on account of her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The standard for withholding of removal is even higher; the applicant must show that it is more likely than not that she would be subject to persecution on account of an enumerated ground if she were repatriated. See id. § 1231(b)(3); Mayorga-Vidal v. Holder, 675 F.3d 9, 13 (1st Cir. 2012).
We first consider whether Villalta-Martinez has established a well-founded fear of persecution based on one of the five statutorily recognized categories. 8 U.S.C. § 1101(a)(42)(A). In her petition for review, Villalta-Martinez's argues that the BIA erred in concluding that there was no evidence establishing a nexus between her past persecution and her proposed social group, her family membership. Villalta-Martinez explains that "[a]lthough money was part of the reasons why gangs targeted her, the main reason was her familial relationship."
Whether an applicant has met his or her burden for proving eligibility is a question of fact, reviewed under the substantial evidence standard. See Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007) ("[W]hether persecution is on account of one of the five statutorily protected grounds is fact-specific"; therefore, "we review the BIA's answer to that question through the prism of the substantial evidence rule."). "We uphold the BIA's findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole, and will reverse only if any reasonable adjudicator would be compelled to conclude to the contrary." Ratnasingam v. Holder, 556 F.3d 10, 13 (1st Cir. 2009) (internal quotations and citations omitted). "When the BIA adopts and affirms the IJ's ruling but also examines some of the IJ's conclusions, this Court reviews both the BIA's and IJ's opinions." Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012).
"[S]howing a linkage to one of the five statutorily protected grounds is 'critical' to a successful asylum claim." Hincapie, 494 F.3d at 218 (quoting I.N.S. v. Elias-Zacarias, 502 U.S. 478, 483, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) ). In order to sufficiently demonstrate persecution on account of a protected ground, the petitioner "must provide sufficient evidence to forge an actual connection between the harm [suffered] and some statutorily protected ground," beyond a "reasonable possibility of a nexus." Id.
In describing the gang's extortion tactics before the IJ, Villalta-Martinez testified that "[t]here were times that we were able to close the doors on time, but at the end they would be outside waiting for us and they would take us, take all our belongings." On cross-examination, she explained that the gang members would follow her and "the rest of the employee[s]." "They were demanding money from the store and then they demanded directly money from me." When asked if she was targeted for working at the store, she responded "[f]or *24 that reason, and also because I was the partner of the owner of the store."
We agree with the finding of the BIA that there is "insufficient evidence in the record to demonstrate that the gang members were or would be motivated to harm [Villalta-Martinez] for any other reason than to extort money from her," and we cannot find, viewing the record as a whole, that a reasonable adjudicator would be compelled to conclude to the contrary. Villalta-Martinez consistently testified in the plural, explaining that both she and her fellow employees were targeted by gang members. Such testimony likely indicates that gang members were targeting all the employees in the store in order to extort money. The threats, albeit terrifying, do not satisfy the statutory requirements for asylum. See Escobar v. Holder, 698 F.3d 36, 38 (1st Cir. 2012) (internal citations omitted) ("Evidence of widespread violence ... affecting all citizens is not enough to establish persecution on a protected ground."). Further, Villalta-Martinez failed to demonstrate whether any of the gang members who threatened her had any knowledge of her relationship with Garcia. See id. at 38 (finding that petitioner failed to provide a connection between family and protected classification where "nothing indicate[d] that the guerrillas specifically targeted [petitioner's] father").
The dissent suggests that remand is appropriate because "neither the BIA nor the IJ ... addressed (or even mentioned) the significant countervailing evidence in the record that suggests that Villalta-Martinez was targeted-at least in part-due to her familial ties to the father of her child." The dissent argues that the IJ and the BIA failed to consider Villalta-Martinez's testimony that the gangs targeted her "because she was the partner of the owner of the store[.]". Relying on Aldana-Ramos v. Holder, 757 F.3d 9, 18 (1st Cir. 2014), the dissent explains that asylum is proper in mixed-motive cases, "so long as one of the statutorily protected grounds is 'at least one central reason' for persecution."
In Aldana-Ramos, the IJ and the BIA erred by stating that the persecution at issue was due to wealth, and therefore could not be attributed to familial relation. Id. The BIA thus failed to consider the possibility of a mixed-motive case. No such error occurred here. The IJ explained that Villalta-Martinez "has not established that one of the reasons she was targeted was because of her relationship with Mr. Garcia." (emphasis added). The IJ and thus the BIA explicitly acknowledged the possibility of a mixed-motive case, but, based on the evidence presented, made a fact-specific determination that Villalta-Martinez had not shown that the persecution was motivated by a family relationship.
The dissent also ascertains that, in light of the "countervailing evidence" as to the nexus requirement, remand is necessary so that the BIA can make additional factual findings. Relying on Aldana-Ramos, the dissent explains that petitioner "put forth credible testimony that creates at least an inference of a 'nexus' between the harm that she suffered and her ties to a person whom she claims is a family member." In Aldana-Ramos, a wealthy family was continually singled out and "followed by members of [the persecuting] gang in unmarked cars" even after they had exhausted their financial resources. Id. As such, the finding that they were targeted because of their wealth, as opposed to their family membership was problematic being that "[n]either the BIA nor the IJ ever addressed this argument." Id. The dissent believes that because Villalta-Martinez presented evidence that she did not have any money when she was persecuted; her lack of money allows an inference *25 that she was persecuted on account of her family relationship; and the IJ and the BIA failed to address that argument. However, Villalta-Martinez did not testify that her coworkers, from whom money was also sought, had money or were wealthy. Furthermore, in Aldana-Ramos, the petitioners testified as to why wealth was not a factor that led to their persecution, which created a basis by which to infer that family membership was at least one of the contributing factors for persecution. Here, however, petitioner's testimony did not create the same dichotomy provided by the petitioners in Aldana-Ramos. Villalta-Martinez testified that in addition to targeting her, the gang members were indiscriminately following and threatening all store employees, supporting the BIA's conclusion that the gang members were seeking money without regard for Villalta-Martinez's familial relation. "To reverse the BIA['s] finding we must find that the evidence not only supports [a contrary] conclusion, but compels it." (quoting I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 n.1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (alterations in original) ).[4] We seek to distinguish this case from Aldana-Ramos, not to make our own findings, as the dissent argues, but instead to show that under the deferential standard imposed, we see a variety of bases by which to support the BIA and IJ's determinations.
This case is further distinguished from Aldana-Ramos because the evidence in that case was far more compelling than the evidence here. Multiple family members in Aldana-Ramos testified that their family was targeted for persecution even after their financial resources were exhausted. Id. at 18. In contrast, the only evidence that Villalta-Martinez offered to support her position that she was persecuted because of her family relationship is her own speculation. See Giraldo-Pabon v. Lynch, 840 F.3d 21, 25 (1st Cir. 2016) (finding that substantial evidence supported the conclusion that the nexus requirement for asylum was not met where the petitioner "cite[d] little in the way of nexus evidence other than ... her own belief that another cousin was stabbed because of other family members' involvement in narco-trafficking"); Guerra-Marchorro v. Holder, 760 F.3d 126, 128-29 (1st Cir. 2014) (holding that substantial evidence supported the conclusion that the nexus requirement was not met where the petitioner "presented 'no evidence other than his own speculation' to forge the statutorily required 'link,' " even though the petitioner's testimony had been found credible (quoting Khalil v. Ashcroft, 337 F.3d 50, 55 (1st Cir. 2003) ) ).
Because we find that Villalta-Martinez failed to establish that any harm she suffered was caused by her relationship with Garcia, we need not address whether the BIA erred in determining that the harm she experienced did not rise to the level of persecution. However, one would think that a gang member's specific threat of raping a pregnant women and killing her unborn child if she failed to meet the demands of the gang within 48 hours, after having been threatened at gun point on at least five separate occasions by the same gang, would be the type of harm the Court *26 should consider severe enough to rise to the level of persecution.
The dissent spends much time discussing the issue of whether Villalta-Martinez satisfied her burden of showing that the threats she received from the gang could be attributed to inaction by the government of El Salvador. However, she failed to develop her government inaction argument before this Court beyond a vague reference in her brief, without citation to case law or analysis. See Valdez v. Lynch, 813 F.3d 407, 411 n.1 (2016) (holding that an argument is waived where the petitioner "throws in a couple references" to it, but "fails to develop" it). Because government action or inaction is a necessary component of persecution, see Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005), Villalta-Martinez's failure to develop that issue before this Court is, on its own, sufficient to sustain the BIA and IJ on this point and to deny her petition for review.
Finally, we note that in making its decision, the BIA explained that "even if the respondent is considered to be in a familial relationship with a man with whom she was in a romantic relationship and with whom she had a child , the respondent has not established a nexus between her past and future fear of harm by gang members and her familial relationship to the man." (emphasis added). While it is well established that the nuclear family constitutes a recognizable social group, neither the BIA nor the IJ found that the petitioner is in fact part of a nuclear family with Garcia. Gebremichael v. I.N.S., 10 F.3d 28, 36 (1st Cir. 1993). Petitioner testified that she was in a relationship with Garcia from 2012 until 2015 when he left El Salvador. Garcia paid rent for petitioner for a period of time and once petitioner became pregnant, she moved into Garcia's home. However, during the pregnancy, Garcia fled El Salvador and petitioner has neither seen nor spoken with him since and Garcia was not listed on the child's birth certificate as the child's father. While we are not in a position to make a finding on this particular issue, we mention these facts solely to demonstrate some of the various obstacles petitioner would face on the remand the dissent seeks. Petitioner's failure to establish a nexus between her persecution and her protected class, and her waiver as to government inaction, are the bases by which we deny her petition for review.
Because Villalta-Martinez cannot satisfy her claim for asylum, we also affirm the BIA's decision denying her claim for withholding of removal. See Escobar, 698 F.3d at 39 ("Statutory withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), requires an even greater likelihood of persecution than asylum."). Lastly, Villalta-Martinez provides no basis by which the Court should reverse the BIA's decision denying her protection under the CAT, as she failed to argue the point beyond an introductory paragraph in her brief. See Sok v. Mukasey, 526 F.3d 48, 52 (1st Cir. 2008) (finding that petitioner waived her CAT claim appeal when she only referenced the claim in an "introductory assertion").
III. Conclusion
For these reasons, we deny the petition for review and affirm the decision of the BIA upholding the IJ's denial of Villalta-Martinez's application for asylum, withholding of removal, and protection under the CAT.

Villalta-Martinez originally argued that she was persecuted on account of two statutorily protected grounds, (1) her immediate family membership and (2) people born into lower classes in El Salvador who are able to attain a professional education. Both grounds were rejected by the BIA. In her petition for review, Villalta-Martinez's only challenge is to the BIA's decision with respect to her claimed family membership; therefore, we need not address the merits of Villalta-Martinez's alternative ground for protection.

Since his illegal reentry into the United States, Garcia has been in federal custody.

Although the testimony is not entirely clear, it appears that Villalta-Martinez transferred to another store that was also associated with Garcia.

We acknowledge that the decision by the BIA mistakenly identified Villalta-Martinez as a citizen of Mexico, even though she is from El Salvador. However, at numerous points in its decision, the BIA correctly identified "[t]he respondent, [as] a native and citizen of El Salvador." This error does not warrant remand as it does not demonstrate that the decision by the BIA was either arbitrary or capricious. See Caldero-Guzman v. Holder, 577 F.3d 345, 348 (1st Cir. 2009).