# United States Court of Appeals
## For the First Circuit

No. 18-2114

PEDRO ANTONIO RAMÍREZ-PÉREZ,

Petitioner,

v.

WILLIAM P. BARR,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Torruella and Selya, Circuit Judges.

Rachel L. Rado and The Law Office of Rachel L. Rado, LLC on brief for petitioner.
Juria L. Jones, Trial Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Joseph H. Hunt, Assistant Attorney General, Civil Division, and Jessica E. Burns, Senior Litigation Counsel, Office of Immigration Litigation, on brief for respondent.

August 13, 2019

**TORRUELLA**, <u>Circuit Judge</u>.  Pedro Antonio Ramírez-Pérez ("Ramírez") seeks review of a Board of Immigration Appeals ("BIA") order affirming the Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  We deny Ramírez's petition for review.

## I.

The following facts are derived from Ramírez's immigration court testimony, which the IJ found credible.

Ramírez was born in Guatemala on June 29, 1994.  There, he worked at a rice factory and through this job earned a higher wage than many in his community.  In 2014, Ramírez began an eight-month relationship with a woman named Delmy Rodríguez.  Ramírez ended this relationship after learning that Delmy was also romantically involved with a member of the Barrio 18 gang.  Ramírez left Guatemala and entered the United States in May 2015, fearing for his life after three encounters with presumed Barrio 18 gang members in the preceding months.  According to Ramírez, the gang members decided to assail him after "[t]hey realized [he] was making a lot of money where [he] was working."

Ramírez's first encounter with gang members occurred early in February 2015, when four armed and masked gang members approached him and demanded his money.  The second incident came

just a week later as Ramírez was returning home from work. This time, two men confronted Ramírez and again demanded his money. A physical altercation took place during this second encounter, but according to Ramírez his assailants did not "hurt [him] roughly." The third and final incident occurred around April or May 2015. Gang members again approached Ramírez and told him that they would make him disappear if he did not disappear on his own. The assailants also told Ramírez not to get involved with their women -- a remark Ramírez interpreted as a reference to his relationship with Delmy. Ramírez did not report any of these incidents to the police.

Ramírez entered the United States without inspection on May 17, 2015 and applied for asylum the following month. He appeared before an IJ on October 11, 2017. Ramírez testified that he feared returning to Guatemala because gang members would pursue him to do harm since he "had previously dated a girl, Delmy . . ., who at the same time started dating a member of the [Barrio 18] gang." Despite finding his testimony to be credible, the IJ denied Ramírez's application for asylum, withholding of removal, and protection under the CAT. The IJ found that Ramírez's three encounters with gang members did not amount to persecution and that he did not belong to a cognizable "particular social group"

for purposes of refugee status.  Ramírez then appealed to the BIA, which dismissed his appeal on October 9, 2018.

## II.

"When, as here, the BIA adopts and affirms . . . the IJ's ruling and further justifies the IJ's conclusions, we review both the BIA's and IJ'S opinions."  Nako v. Holder, 611 F.3d 45, 48 (1st Cir. 2010).  We review any legal conclusions de novo, "with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles."  Rivas-Durán v. Barr, 927 F.3d 26, 30 (1st Cir. 2019) (quoting Vásquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011)). "By contrast, we review factual findings under the deferential 'substantial evidence standard,' meaning that we will not disturb such findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Id. (quoting Aguilar-Escoto v. Sessions, 874 F.3d 334, 336-37 (1st Cir. 2017)).

## A.

To obtain asylum, an applicant must establish that he qualifies as a refugee under section 101(a)(42)(A) of the Immigration and Nationality Act ("INA").  8 U.S.C. § 1101, 1158. A refugee is someone who is "unable or unwilling" to return to his country of origin "because of persecution or a well-founded fear

-4-

of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (emphasis added). The question of whether a proposed classification qualifies as a "particular social group" for asylum purposes is a question of law. 8 C.F.R. § 1003.1(d)(3)(ii); see also Cantarero v. Holder, 734 F.3d 82, 84 (1st Cir. 2013). Because Ramírez's "membership in a particular social group is an indispensable element of [his] claim[], our analysis begins and ends with it." Rivas-Durán, 927 F.3d at 30.

**B.**

The centerpiece of Ramírez's argument is that he is entitled to asylum because of his belonging to a "particular social group" made up by "males who have had romantic involvement with the partners of drug dealers." This proposed social group is somewhat different from the one that Ramírez presented to the agency, which was "people who have been romantically involved with the partners of cartel leaders and have been targeted for assassination on that basis, and who cannot depend on the Guatemalan police for help." And it differs from the asserted social group that was the focus of much of the briefing, as well as of the agency's rulings: "individuals who were romantically involved with a gang member's partner."

To be cognizable for purposes of asylum, a social group must be: "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." Rivas-Durán, 927 F.3d at 30-31 (quoting Vega-Ayala v. Lynch, 833 F.3d 34, 39 (1st Cir. 2016)). "An immutable characteristic is one that 'members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.'" Vega-Ayala, 833 F.3d at 39 (quoting Mayorga-Vidal v. Holder, 675 F.3d 9, 14 (1st Cir. 2012)). The particularity requirement, in turn, is met if the group is "'discrete and ha[s] definable boundaries -- it must not be amorphous, overbroad, diffuse or subjective.'" Paiz-Morales v. Lynch, 795 F.3d 238, 244 (1st Cir. 2015) (citing Matter of M-E-V-G-, 26 I. & N. Dec. 227, 239 (BIA 2014)). "Finally, social distinction refers to 'whether those with a common immutable characteristic are set apart, or distinct, from other persons within the society in some significant way.'" Rivas-Durán, 927 F.3d at 31 (quoting Matter of M-E-V-G-, 26 I. & N. at 238). To meet this requirement, Ramírez's proposed group must be perceived as such within Guatemalan society. See Pérez-Rabanales v. Sessions, 881 F.3d 61, 66 (1st Cir. 2018).

Ramírez asserts that his proposed protected group of men who have been romantically involved with the partners of drug

-6-

dealers "has all the elements of a cognizable social group" entitled to asylum protection, namely, "immutability of a past experience, social visibility, and sufficient particularity." Ramírez explains that his belonging in the group is immutable because "he cannot undo the fact that he was ever" in a romantic relationship with Delmy, who was also involved with drug dealers. But Ramírez fails to discuss how his proposed group fulfills the "social visibility" and "particularity" requirements to be cognizable for asylum.

Despite Ramírez's unhelpful briefing on this issue, "[w]e can pass over the [immutability] and [social distinction] requirements, because even if the petitioner could show that he shared an immutable characteristic with a socially distinct group, he failed to define the purported group with the requisite particularity." Paiz-Morales, 795 F.3d at 244. Almost each component of Ramírez's suggested classification lacks particularity. The group's definition sets no guidelines on what extent of physical and/or emotional contact rises to the level of "romantic involvement." It also tells us nothing about what sort of relationship makes someone the "partner" of a "cartel leader" or of a "gang member." Its reference to "cartel leaders" is similarly indefinite.[1]  Thus, Ramírez's proposed group lacks

---

[1]  Our analysis here focuses on "cartel leaders" because, in his

definable boundaries and "is by definition too amorphous and overbroad to be particular." Id.

The BIA accordingly did not err in concluding -- like the IJ had done before -- that Ramírez is ineligible for asylum because he lacks membership in a cognizable "particular social group." Our resolution of this issue also disposes of Ramírez's withholding of removal claim. See id. at 245 ("A petitioner who cannot clear the lower hurdle for asylum will necessarily fail to meet the higher bar for withholding of removal.").

**C.**

Our final task is to consider whether substantial evidence in the record supports the BIA's finding that Ramírez is not entitled to protection under the CAT. We find that it does.

To be granted deferral of removal under the CAT, the burden is on the petitioner "to establish that it is more likely than not that . . . he would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2) (8 C.F.R. § 1208.16(c)(2)). Torture is "any act by which severe pain or suffering . . . is intentionally inflicted on a person . . . at the

---

proceedings before the agency, Ramírez only included "cartel leaders" -- and not "drug dealers" -- within his proposed particular social group. See Granada-Rubio v. Lynch, 814 F.3d 35, 39 (1st Cir. 2016) ("To the extent the social group proposed [on judicial review] was not proposed to the BIA, it is unexhausted.").

-8-

instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 208.18 (a)(1) & (3) (8 C.F.R. §§ 1208.18 (a)(1) & (3)). For there to be government acquiescence, the "public official, prior to the activity constituting torture, [must] have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18 (a)(7) (8 C.F.R. § 1208.18 (a)(7)).

In assessing whether it is more likely than not that a petitioner would be tortured in the proposed country of removal, "all evidence relevant to the possibility of future torture shall be considered, including . . .: (1) [e]vidence of past torture inflicted upon the applicant; (2) [e]vidence that the applicant could relocate to a part of the country of removal where he is not likely to be tortured; (3) [e]vidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and (4) [o]ther relevant information regarding conditions in the country of removal." 8 C.F.R. § 208.16 (c)(3) (8 C.F.R. § 1208.16(c)(3)).

Ramírez argues that "it is more likely than not that he would be tortured if he were removed to Guatemala." Without much explanation, he avers that the "record demonstrates . . . Barrio 18 [gang members] would target [him] for torture, and that . . .

-9-

the Guatemalan government acquiesces to torture." This is so, he alleges, because "both gang members and [the] Guatemalan government are involved in torture," and "criminal gangs have infiltrated law enforcement, government, and the judiciary."

It was Ramírez's burden to establish that there is a clear probability he will be tortured upon his repatriation to Guatemala by the active participation or willful blindness of Guatemalan government authorities. See Gurung v. Lynch, 618 F. App'x 690, 696 (1st Cir. 2015). Ramírez failed to satisfy this burden. His three encounters with the gang members -- during which, as he testified before the IJ, he experienced no significant physical harm -- did not amount to torture. See 8 C.F.R. §§ 208.18 (a)(1) & (3) (8 C.F.R. §§ 1208.18 (a)(1) & (3)) (defining torture as an act of "severe pain or suffering"). Moreover, Ramírez did not report any of these three encounters to the police, and the record is otherwise devoid of evidence explaining with reasonable certainty how he would experience future torture at the hands or with the acquiescence of government officials. Ramírez's reliance on State Department and other country reports discussing the brutality and pervasiveness of gang violence in Guatemala does not allow him to surmount this hurdle. See Amouri v. Holder, 572 F.3d 29, 35 (1st Cir. 2009) (noting that, although such reports are helpful to assess CAT claims, they "do not necessarily override

petitioner-specific facts").  As a result, the evidence before us about the likelihood that Ramírez will be tortured upon his return to Guatemala is insufficient.

## III.

Given the foregoing, we deny Ramírez's petition for judicial review.

**Denied**.