# United States Court of Appeals
## For the First Circuit

No. 19-1694

YONG GAO,

Petitioner,

v.

WILLIAM P. BARR,
ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Selya, and Stahl,
<u>Circuit Judges</u>.

<u>Adedayo O. Idowu</u> for petitioner.
<u>Elizabeth K. Fitzgerald-Sambou</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, with whom <u>Joseph H. Hunt</u>, Assistant Attorney General, Civil Division, and <u>Bernard A. Joseph</u>, Senior Litigation Counsel, Office of Immigration Litigation, were on brief, for respondent.

February 20, 2020

**STAHL**, **Circuit Judge**.  Yong Gao, a native and citizen of the People's Republic of China ("China"), petitions this court for review of a Board of Immigration Appeals ("BIA") order affirming an Immigration Judge ("IJ")'s denial of his applications for asylum, withholding of removal, and protection under Article III of the United Nations Convention Against Torture ("CAT"). After careful consideration of Gao's claims, the BIA's order, and the underlying findings of the IJ, we deny Gao's petition for review.

## I.  Factual Background and Procedural History

In China, Gao worked for a construction supply house, where he oversaw deliveries and dispatches.  In 2011, a customer named Auntie Li gave Gao a Bible from a church of so-called "Shouters," which China considers to be a cult.  Subsequently, Gao attended church meetings at Auntie Li's house.  Gao also brought the Bible to his place of work and read it during his breaks.

In June or July of 2011, Gao's supervisor caught him reading the Bible at work.  The supervisor confiscated the Bible and called the police, who arrested Gao at the supply house.  The police took Gao to the public security bureau and questioned him from about 8 or 9 p.m. until midnight.  The police then placed Gao in a separate room overnight.  The next day, a different officer questioned Gao, pushed his head against the top of a desk, and threatened to beat him.  Gao ultimately admitted to the police

that Auntie Li had given him the Bible. During his approximately twenty-three hours of detention, Gao was denied food and water. He was released around 7 p.m. on the second day of detention, after his family had paid a 5000-yuan fine to the police. Gao subsequently attempted to return to his place of employment but was informed that he had been terminated because of his alleged cult affiliation. He later visited Auntie Li's house and saw that the door had been barred, leading him to conclude she had also been arrested.

In March 2012, Gao acquired a visa to travel to the United States. Obtained through a private agency in China, the visa falsely stated that Gao would attend the Juilliard School in New York.[1] On March 27, 2012, he was admitted to the United States as a nonimmigrant and was authorized to remain in the country until September 26 of that year. On August 21, 2012, Gao applied for asylum, withholding of removal, and protection under the CAT. On September 29, 2014, the United States Department of Homeland Security issued Gao a Notice to Appear and placed him in removal

----

[1] Though the IJ stated that Gao had testified that he obtained a "business visa . . . . to attend Julliard [sic] School in New York," it is unclear whether the visa was intended for study, work, or both. The issued visa was a nonimmigrant B-2 visa that was good until September 26, 2012. Gao testified before the IJ that the "business visa" was obtained on the pretense of "[i]nterview[ing] for the school." He also testified that the visa application falsely stated that he had both studied and worked at the Shanghai Conservatory of Music.

proceedings because he had overstayed his visa.  Gao conceded removability.

On January 18, 2018, an IJ denied Gao's applications and ordered his removal.  Regarding Gao's asylum application, the IJ determined that he failed to demonstrate past persecution and a well-founded fear of future persecution in China.  Specifically, the IJ reasoned that the harm Gao suffered did not constitute persecution because he did not experience more than ordinary harassment, mistreatment, or suffering.  In coming to that conclusion, the IJ considered the severity, duration, and frequency of Gao's physical abuse and whether his harm was systematic.  The IJ found that Gao was arrested once in China and detained for approximately twenty-three hours.  The IJ noted Gao's testimony that he was interrogated twice, beaten once, and denied food and water.  The IJ also observed that Gao did not indicate he required professional medical treatment or sustained any lasting injuries as a result of his encounter with police.

The IJ determined that because Gao did not demonstrate past persecution, he was not entitled to a presumption that he would face future persecution.  See 8 C.F.R. § 1208.13(b)(1).  The IJ did state that Gao could nevertheless prevail on his asylum claim by proving a well-founded fear of future persecution on account of a protected ground that was both subjectively and objectively reasonable.  The IJ added that Gao needed to

- 4 -

demonstrate that he could not safely relocate in China to avoid future persecution.  See 8 C.F.R. § 1208.13(b)(2)-(3).  The IJ then found that Gao had remained in China without police encounters for nine months following his arrest and that he was then given a visa to leave China and go to the United States.[2]

After reviewing the United States Department of State 2016 International Religious Freedom Report for China, which Gao had submitted into evidence, the IJ found that Gao could nevertheless "relocate somewhere safely in China."  Accordingly, the IJ determined that Gao had not established a well-founded fear of future persecution and denied his asylum application.

As to Gao's withholding of removal application, the IJ determined that Gao did not meet the requisite clear probability of persecution standard because he failed to meet the less stringent standard for asylum.  The IJ also denied Gao CAT protection because Gao did not establish that Chinese officials would more likely than not torture him upon his repatriation.

Gao appealed to the BIA on February 12, 2018, arguing that the IJ erred in concluding that his experience did not constitute past persecution and that he did not have a well-founded fear of future persecution.  On June 28, 2019, the BIA affirmed

---

[2] Though the IJ stated that Gao "was given a visa to leave China," the record does not describe any visa other than the nonimmigrant B-2 entry visa that Gao obtained from the United States.

- 5 -

the IJ's decision, agreeing that Gao's single instance of harm did not constitute past persecution. The BIA also determined that Gao "ha[d] not challenged the Immigration Judge's determination that he could avoid future harm by relocating" in China. The BIA further determined that Gao could not satisfy the more stringent standard for withholding of removal and that he did not raise specific arguments relating to the IJ's denial of CAT protection. Gao timely petitioned this court for review of the BIA's order.

## II. Discussion

Where, as here, "the BIA adopts and affirms the IJ's ruling but also examines some of the IJ's conclusions, this Court reviews both the BIA's and IJ's opinions." Loja-Paguay v. Barr, 939 F.3d 11, 15 (1st Cir. 2019) (quoting Perlera-Sola v. Holder, 699 F.3d 572, 576 (1st Cir. 2012)). We review legal conclusions de novo, "with appropriate deference to the agency's interpretation of the underlying statute in accordance with administrative law principles." Ramírez-Pérez v. Barr, 934 F.3d 47, 50 (1st Cir. 2019) (quoting Rivas-Durán v. Barr, 927 F.3d 26, 30 (1st Cir. 2019)). We review administrative factual findings "under the deferential 'substantial evidence standard,' meaning that we will not disturb such findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Rivas-Durán, 927 F.3d at 30). Under this standard, "administrative findings of fact are

- 6 -

conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).

Gao now contends that the IJ and the BIA erred in concluding that he did not suffer past persecution and was not entitled to asylum, withholding of removal, or protection under the CAT.  We address each argument in turn, and conclude that none has merit.

### A.  Asylum

Under our immigration laws, the Attorney General may grant asylum to an applicant if the applicant demonstrates that he is a "refugee."  8 U.S.C. § 1158(b)(1)(A), (B)(i); see 8 C.F.R. § 1240.8.  A refugee is defined as a person who is unable or unwilling to return to the country of his nationality because of past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1101(a)(42)(A). A showing of past persecution creates a rebuttable presumption that the applicant's fear of future persecution is well-founded. 8 C.F.R. § 1208.13(b)(1).

"Persecution" is not defined by statute, and "what constitutes persecution is resolved on a case-by-case basis." Panoto v. Holder, 770 F.3d 43, 46 (1st Cir. 2014).  Generally, it involves a discriminatory harm caused by government action or allowed by government acquiescence that "surpasses

- 7 -

'unpleasantness, harassment, and even basic suffering.'" Id. (quoting Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008)). "The severity, duration, and frequency of physical abuse are factors relevant to this determination, as is whether harm is systematic rather than reflective of a series of isolated incidents." Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014) (quoting Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010)). We also consider the severity and frequency of the applicant's alleged harassment in light of "the nature and extent of an applicant's injuries." Martínez-Pérez v. Sessions, 897 F.3d 33, 40 (1st Cir. 2018) (quoting Vasili v. Holder, 732 F.3d 83, 89 (1st Cir. 2013)).

## 1. Past Persecution

Substantial evidence supported the IJ's and BIA's conclusions that Gao's harm did not constitute past persecution. Gao's sole detention was neither systematic nor frequent, and "a single detention, even one accompanied by beatings and threats . . . does not necessarily rise to the level of persecution." Jinan Chen v. Lynch, 814 F.3d 40, 45 (1st Cir. 2016); see Anacassus v. Holder, 602 F.3d 14, 19-20 (1st Cir. 2010) ("[I]solated beatings, even when rather severe, do not establish systematic mistreatment needed to show persecution." (quoting Wiratama v. Mukasey, 538 F.3d 1, 7 (1st Cir. 2008))). Gao also fails to establish that the twenty-three-hour duration of his detention was persecutory. See Jinan Chen, 814 F.3d at 45-46

(finding no persecution where petitioner was detained for nine days, beaten, and threatened by Chinese police); Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (finding no persecution where petitioner's multiple detentions coupled with beatings "never exceeded 24 hours").

Gao also does not demonstrate that his ordeal was sufficiently severe to constitute persecution under this court's precedent. The record does not show that Gao sustained any injuries during his twenty-three-hour detention. See Jinan Chen, 814 F.3d at 45-46 (finding no persecution where petitioner's injuries following nine-day detention with beatings "did not exceed bruising"); Thapaliya, 750 F.3d at 58-60 (finding no persecution where petitioner was beaten "fairly severely" and "suffered injuries to his head and chin, as well as bruising all over his body"). Moreover, Gao did not indicate that he sought or required medical treatment following his release. See Jinan Chen, 814 F.3d at 46 (citing Topalli, 417 F.3d at 132; Vasili, 732 F.3d at 89) (recognizing as relevant that petitioner "did not require hospitalization or conventional, allopathic medical care" following detention); Cabas v. Holder, 695 F.3d 169, 174 (1st Cir. 2012) (finding no persecution where petitioner's "single incident of physical harm was an isolated event and the resulting injuries were not sufficiently severe to require medical attention").

Gao additionally contends that the IJ and the BIA failed to consider the 5000-yuan fine his family paid to obtain his release from detention and his loss of employment.[3]  This argument is unpersuasive.  "[E]conomic disadvantage must be severe and deliberate to rise to the level of persecution."  Yong Xiu Lin v. Holder, 754 F.3d 9, 16 (1st Cir. 2014) (alteration in original) (quoting Wu v. Holder, 741 F.3d 211, 215 (1st Cir. 2013)).  Gao has not demonstrated that these harms caused him severe financial difficulty or prevented him from obtaining other employment.[4]  See Jinan Chen, 814 F.3d at 43-46 (finding no persecution where petitioner's father paid "a lot of money" to Chinese police to secure petitioner's release from detention); Alexandrescu v. Mukasey, 537 F.3d 22, 25 (1st Cir. 2008) (finding no economic persecution where petitioner "lost his job, not his ability to make a living").  Gao's argument that he suffered post-detention persecution is further undermined by his continued, uneventful

---

[3] In his petition for review, Gao asserts for the first time that he was required to report to Chinese police on a weekly basis after his detention.  We will not consider this assertion because it was not raised below.  See 8 U.S.C. § 1252(b)(4)(A) ("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based . . . .").

[4] In an affidavit accompanying his initial applications for asylum, withholding of removal, and CAT protection, Gao stated that he "gave up a steady job in China" around the time he departed for the United States.  The record does not otherwise describe Gao's employment in China beyond the position that he lost following his detention.

residence in China for approximately nine months until his departure on his own passport to the United States. See Jinan Chen, 814 F.3d at 43-46 (finding no persecution where petitioner remained in China without police mistreatment for approximately three months following detention until departing on his own passport); Topalli, 417 F.3d at 132 (finding no persecution where petitioner remained in Albania without police mistreatment for approximately three years following arrest). In sum, the IJ's and BIA's conclusions that Gao's harm did not constitute past persecution, even when looking at all the evidence in aggregate, were supported by substantial record evidence.

### 2. Future Persecution

Because he did not establish past persecution, Gao is not presumed to have a well-founded fear of future persecution. See 8 C.F.R. § 1208.13(b)(1). In addition, Gao "does not have a well-founded fear of persecution if [he] could avoid persecution by relocating to another part of [his] country of nationality . . . if under all the circumstances it would be reasonable to expect [him] to do so." Id. § 1208.13(b)(2)(ii); see Chen Qin v. Lynch, 833 F.3d 40, 45 (1st Cir. 2016) (finding no well-founded fear of future persecution where petitioner could safely relocate to her brother's home in her native country). The IJ found that Gao could safely relocate in China upon his return to avoid persecution. Gao did not dispute that finding in his brief to the

- 11 -

BIA, and in its order, the BIA determined that Gao had "not challenged the Immigration Judge's determination that he could avoid future harm by relocating."

This court "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). A petitioner's "failure to present developed argumentation to the BIA on a particular theory amounts to a failure to exhaust administrative remedies as to that theory." Avelar Gonzalez v. Whitaker, 908 F.3d 820, 828 (1st Cir. 2018) (quoting Ramirez-Matias v. Holder, 778 F.3d 322, 327 (1st Cir. 2015)). Before the BIA, Gao failed to present any argumentation regarding the relocation finding. Accordingly, as Gao failed to exhaust his administrative remedies regarding that finding, we may not now review it. Consequently, Gao cannot demonstrate a well-founded fear of future persecution upon return to China. See 8 C.F.R. § 1208.13(b)(2)(ii); Chen Qin, 833 F.3d at 45.

Overall, Gao has not demonstrated past persecution or a well-founded fear of future persecution, and the denial of his asylum application was supported by substantial record evidence. See 8 U.S.C. §§ 1101(a)(42)(A), 1252(b)(4)(B).

## B.  Withholding of Removal

To be entitled to withholding of removal, Gao must establish that his "life or freedom would be threatened in [China]

because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); see 8 C.F.R. § 1208.16(b). To carry this burden without having demonstrated past persecution, Gao must show that it is "more likely than not" that he would be persecuted on account of a protected ground if repatriated. 8 C.F.R. § 1208.16(b)(2); see Olmos-Colaj v. Sessions, 886 F.3d 168, 176 (1st Cir. 2018) (describing the standard as "a clear probability of future persecution" (quoting López-Castro v. Holder, 577 F.3d 49, 54 (1st Cir. 2009))). This standard is more stringent than that of asylum. Villalta-Martinez v. Sessions, 882 F.3d 20, 23 (1st Cir. 2018). Thus, because Gao cannot succeed on his asylum claim, we also affirm the denial of his claim for withholding of removal.[5] See id. at 26.

## C. CAT

In his brief to this court, Gao included a section titled "Petitioner's application for protection under Article 3 of the UN Convention Against Torture should also be granted." Thereafter,

---

[5] We note that an applicant for withholding of removal who has not demonstrated past persecution cannot satisfy the relevant standard if he "could avoid a future threat to his or her life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.16(b)(2). Therefore, Gao cannot succeed in his claim for withholding of removal because of the IJ's unchallenged relocation finding, which we cannot now review. See 8 U.S.C. § 1252(d)(1).

- 13 -

Gao merely cites to Article 3 of the CAT, provides the standard governing eligibility for CAT protection, see 8 C.F.R. § 208.16(c)(2)-(3), and recites the relevant definition of torture, see id. § 208.18(a)(1). Because Gao has not offered any developed argumentation relating to his claim, we deem it waived. See Olmos-Colaj, 886 F.3d at 176 (citing Jiang v. Gonzales, 474 F.3d 25, 32 (1st Cir. 2007) ("[T]heories advanced in skeletal form, unaccompanied by developed argumentation, are deemed abandoned.")); Sok v. Mukasey, 526 F.3d 48, 52 (1st Cir. 2008) (deeming CAT claim waived where petitioner only presented introductory assertion of entitlement to CAT protection).

### III. Conclusion

We deny the petition for review and affirm the decision of the BIA upholding the IJ's denial of Gao's applications for asylum, withholding of removal, and protection under the CAT.