# United States Court of Appeals
## For the First Circuit

No. 18-1470

MICHAEL MACHARIA ZHAKIRA,

Petitioner,

v.

WILLIAM P. BARR,
United States Attorney General,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

---

Before

Lynch, Circuit Judge,
Souter,[*] Associate Justice,
and Lipez, Circuit Judge.

---

John J. Loscocco, with whom Ashley M. Barkoudah and Barker, Epstein & Loscocco were on brief, for petitioner.
Sharon M. Clay, with whom Joseph H. Hunt, Assistant Attorney General; Carl McIntyre, Assistant Director, U.S. Department of Justice, Office of Immigration Litigation; and Nancy E. Friedman, Senior Litigation Counsel, U.S. Department of Justice, Office of Immigration Litigation, were on brief, for appellee.

---

October 2, 2020

---

[*] Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LIPEZ**, **Circuit Judge**.  Petitioner Michael Macharia Zhakira, a native and citizen of Kenya, seeks review of a final order of the Board of Immigration Appeals ("BIA") denying his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  An immigration judge ("IJ") concluded that Zhakira failed to establish either a well-founded fear of persecution based on a protected ground, as required for asylum and withholding of removal, or the likelihood of officially sanctioned torture, required for CAT relief.  The BIA dismissed the appeal and, after granting Zhakira's motion for reconsideration, reaffirmed its initial ruling.  Zhakira asserts that the IJ and BIA erred, inter alia, in finding that terror attacks in Kenya by the group Al-Shabaab constituted generalized violence and in rejecting his proposed social group of westernized/Americanized Christian Kenyans who oppose Al-Shabaab.  Finding Zhakira's contentions unavailing, we deny his petition for review.

## I.

### A. Factual Background

Zhakira arrived in the United States in 2005 to participate in a dairy farming exchange program.  He overstayed his visa after completing the program because he could not afford to travel home.  Zhakira is not married, but he has three children who are United States citizens.

In 2014, after Zhakira was placed in removal proceedings, he sought asylum, withholding of removal, and protection under the CAT.[1]  In an affidavit submitted with his application, Zhakira stated that he sought asylum "because I fear political and religious persecution in Kenya by Al-Shabaab terrorists on account of my Christianity and my support for the efforts of Kenya and the US against Al-Shabaab."  He further noted that, "[a]s a person present in the US for over ten years, who has American children, I will be closely associated with the USA, further increasing the risk of my being harmed by Al-Shabaab terrorists."

At his immigration hearing in 2016, Zhakira reported that he grew up as a Presbyterian Christian, regularly attending church, and that he continued to practice his religion in the United States.  He became worried about returning to Kenya after a series of widely publicized terrorist attacks by Al-Shabaab. Zhakaira testified that in at least two of the attacks -- at a Nairobi mall, where sixty-seven people were killed, and at a college in Garissa, where roughly 150 people died -- the only individuals spared were Muslims who could recite verses from the

---

[1] Although Zhakira's application for asylum was untimely because it was filed more than a year after his entry into the United States, see 8 U.S.C. § 1158(a)(2)(B), the IJ excused the tardiness because of changed country conditions, see id. § 1158(a)(2)(D) -- specifically, the escalating terrorist activity by the group Al-Shabaab.

Koran.  Zhakira reported that his family members who remain in Kenya and practice Christianity "live in constant fear" of Al-Shabaab.  Oral Decision of the IJ, at 3.[2]

**B. The IJ's Decision**

The IJ found Zhakira credible, but she concluded that his fear of being targeted by Al-Shabaab was not well-founded. The IJ noted that Zhakira's parents and sister had not been harmed despite their practice of Christianity, and she observed that "general conditions of violence and civil unrest affecting Kenya as a whole are not cognizable grounds for persecution claims." The IJ rejected Zhakira's contention that he would be targeted because he had been in the United States for ten years and had U.S.-citizen children.  The IJ found that those characteristics do not define a particular and distinct social group within Kenyan society sufficient to warrant protection under the Immigration and Naturalization Act ("INA").  Accordingly, the IJ held that Zhakira had not established either a well-founded fear of persecution based on a protected ground, disqualifying him for asylum, or the clear probability of future persecution required for withholding of removal.

---

[2] Zhakira reported, however, that his father was badly beaten and his home was burned in 2008 when he was attacked by the Mungiki group -- unrelated to Al-Shabaab -- "because of his Christianity."

- 4 -

The IJ further concluded that Zhakira had not established that it was more likely than not that he would be subject to torture, "let alone that the Kenyan government would instigate, consent, acquiesce, or turn a blind eye to such torture," as required by the CAT. Although acknowledging Al-Shabaab's terrorist activity, the IJ noted that the Department of State's Human Rights Report stated that security forces had attempted to drive Al-Shabaab militants out of Kenya. The IJ thus determined that Zhakira is not entitled to protection under the CAT.

## C. Appeal to the BIA

### 1. Petitioner's Claims of Error

In his brief on appeal to the BIA, Zhakira identified three primary errors by the IJ: (1) the failure to address his claim that he has a well-founded fear of persecution based on his political opinion, (2) mistaken reliance on his family's lack of harm in finding that Zhakira's fear of religious persecution was not well-founded, and (3) mischaracterization of his religious persecution claim as a claim based on membership in a "social group of individuals present in the US for ten years who have US citizen children."

Zhakira emphasized that, in both his application and testimony before the IJ, he consistently stated his fear that he would be targeted as a supporter of "the alliance of countries,

including Kenya, that are actively opposing Al-Shabaab's campaign to impose Sharia law on Somalia," and he argued that the evidence in the record "documents that a political motive is at least one central reason for the harm feared." He noted that he is not required to show that he would be singled out for persecution because the record shows a pattern or practice of persecution against those similarly situated to him, i.e., individuals "who oppose [Al-Shabaab's] activities in Somalia as well as those associated with Christian and western interests." Moreover, he asserted, voluminous evidence in the record detailing Al-Shabaab's attacks throughout Kenya "demonstrate[s] that the government is unable to control Al-Shabaab." Zhakira asserted that his family's avoidance of violence thus far -- despite their practice of Christianity -- does not undermine his claim to a well-founded fear of future persecution based on his own religious practice.

Zhakira also objected to the IJ's characterization of his claim as based on a particular social group and stated that his reliance on his U.S. connections simply "informed the asylum claims he made based on his actual political opinions and those that would be imputed to him, as well as on the basis of his Christianity." Zhakira nonetheless went on to argue that, "even analyzed under the particular social group theory, he has asserted a well-founded fear of persecution."

## 2. The BIA's Initial Decision

In affirming the IJ's ruling, the BIA largely echoed the IJ's reasoning. Despite Zhakira's assertion that he had not claimed fear of persecution based on a social group, the BIA concluded that he had done so, in effect, by arguing that he would be targeted by Al-Shabaab "due to his western manner, his time in the United States and his United States citizen children." The BIA agreed with the IJ that such a social group lacks both the requisite particularity and social distinction to be cognizable. However, in its discussion of the social group claim, the BIA erroneously included a sentence that is plainly inapplicable to Zhakira's circumstances, stating that the evidence does not support the social distinction of a group comprised of "Kenyan women who lack the presence of an adult male, such as a boyfriend, husband, or father, to offer protection."

With respect to Zhakira's religion-based claim, the BIA acknowledged Al-Shabaab's terrorist activity in Kenya aimed at non-Muslims, but it noted that 82 percent of Kenya's population is Christian and that "the isolated attacks, though horrific, do not support the respondent's claim that he will face persecution or that there is a pattern or practice of persecution of Christians in Kenya." The panel also found that the record "does not show the inability or an unwillingness on the part of the government to stop" the "large number of attacks" by Al-Shabaab.

- 7 -

The BIA found no error in the IJ's failure to address Zhakira's political opinion as a basis for asylum, concluding that he did not develop such a claim separate from his religion-based claim. Moreover, the BIA stated, the record lacks evidence that Zhakira has been politically active against Al-Shabaab "or that the terrorists have any interest in him in this regard." Finally, the BIA agreed with the IJ that Zhakira had not shown eligibility for CAT relief.

### 3. Zhakira's Motion to Reconsider

Acquiescing to the agency's determination that he had presented a social-group claim, Zhakira argued in his motion to reconsider that the BIA had clearly erred in finding that his proposed group was not cognizable under the INA. He noted the clear misstatement concerning females who lack male support and disputed the BIA's characterization of his social group as limited to westernized males with or without U.S.-citizen children. Rather, he argued, his application and testimony established that he fears persecution on account of being a "westernized/Americanized Christian who supports the international campaign against the Al Shabaab terrorists." He asserted that "[t]he record . . . is replete with examples of Al-Shabaab targeting for attack those associated with Western education, with Christianity, with being unable to recite Koranic verses, with

believing in the UN mission in Somalia against Al-Shabaab in which Kenya plays a vital role."

Zhakira also challenged the agency's rejection of his evidence showing that Al-Shabaab was engaging in a pattern or practice of persecuting Christians, its finding that he fears generalized violence rather than targeted harm, and its determination that he failed to show that the Kenyan government is unwilling or unable to protect him from Al-Shabaab. On the latter point, he noted that, despite international efforts to stop Al-Shabaab, the group has been able to increase its attacks against non-Muslim and western targets in Kenya. Finally, Zhakira argued that the BIA clearly erred in stating that he had insufficiently developed a claim based on his political opinion.

**4. BIA Decision on Reconsideration**

The BIA granted Zhakira's motion to reconsider and corrected its obvious error in referencing Kenyan women. In all other respects, however, it reaffirmed its earlier decision, noting in a footnote that it declined to reconsider most of Zhakira's arguments. However, the BIA readdressed the claim of a particularized social group. It noted that Zhakira had complained that the BIA's previous decision failed to consider a social group that reflected his religion and opposition to Al-Shabaab as well as his status as a westernized male. In response, the BIA first observed that Zhakira had not specified any social group before

the IJ or on appeal.  It then explained that neither his religion nor his political opposition to Al-Shabaab remedied the lack of particularity or social distinction of his claimed social group. Again referencing Kenya's 82-percent Christian population, the BIA stated that Zhakira's religion does not make his proposed social group sufficiently distinct or particular within Kenya, and his lack of observable political activity there means that he would not "be more noticeable than any other Christian Kenyan, either to the group or to the population in general."

Accordingly, the BIA dismissed Zhakira's appeal and, pursuant to the IJ's order, granted him voluntary departure.

## II. Discussion

### A.  Standard of Review

Where, as here, the Board affirms "and further justifies the IJ's conclusions," we review both the BIA's and IJ's rulings.  Ramírez-Pérez v. Barr, 934 F.3d 47, 50 (1st Cir. 2019) (quoting Nako v. Holder, 611 F.3d 45, 48 (1st Cir. 2010)).  We assess the agency's legal determinations de novo and its "factual findings under the deferential 'substantial evidence standard,' meaning that we will not disturb such findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'"  Id. (quoting Rivas-Durán v. Barr, 927 F.3d 26, 30 (1st Cir. 2019)).

## B. Asylum Relief

To establish eligibility for asylum, a petitioner must prove that he is "unable or unwilling" to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The necessary showing is two-pronged: Zhakira must establish both that he "genuinely fears future persecution" based on a statutory ground and that his fear is objectively reasonable. Martínez-Pérez v. Sessions, 897 F.3d 33, 39 (1st Cir. 2018) (quoting Carvalho-Frois v. Holder, 667 F.3d 69, 72 (1st Cir. 2012)).[3]

As noted above, Zhakira initially resisted the agency's assessment that he had relied on membership in a social group as one basis for relief. In his petition to this court, however, Zhakira asserts eligibility for asylum based on three grounds: his Christian religion, his political opposition to Al-Shabaab, and a social group that includes both of those attributes -- westernized/Americanized Christians who support the international campaign against Al-Shabab. We consider each in turn.

---

[3] A showing of past persecution gives rise to a rebuttable presumption of a well-founded fear of future persecution. See Martínez-Pérez, 897 F.3d at 39. Zhakira does not claim that he was persecuted in the past.

- 11 -

**1. Religion.** Zhakira presented a considerable amount of evidence showing that, in Al-Shabaab's terrorist attacks, Christians were targeted and Muslims were spared. The IJ and BIA nonetheless found that Zhakira had failed to show either a pattern or practice of persecution of Christian Kenyans or "an individualized risk on this basis." Zhakira has not reiterated a pattern-or-practice argument to this court, and we therefore do not consider that rationale.

With respect to the fear of targeted religious persecution, we find no basis for overturning the IJ's and BIA's conclusion that Zhakira failed to make a showing adequate to warrant relief. The BIA stated that the IJ had properly considered that Zhakira's family, "also Christians, live without problem in [his] home town." The BIA further observed that 82 percent of Kenyans are Christian "and, for the most part live without problems with Al Shabaab."

We do not minimize Zhakira's and his family's ongoing fear of a terrorist attack, which was acknowledged by the IJ. Nonetheless, the IJ and BIA supportably found that, with respect to his religion, Zhakira has not differentiated himself from his family members who have not been directly threatened or harmed, or from the majority of Kenyans who also are Christians and have similarly experienced no persecution. See, e.g., Aguilar-Solis v. INS, 168 F.3d 565, 573 (1st Cir. 1999) (noting that "petitioner

- 12 -

has not provided a satisfactory differentiation of his situation from that of his siblings," and that, "[w]ithout some explanation, the fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return").  Accordingly, we conclude that substantial evidence supports the agency's rejection of Zhakira's petition for asylum based on religion.

**2. Political Opinion.**  Zhakira argues that his support for governmental efforts to fight Al-Shabaab exposes him to a likely risk of future persecution sufficient to render him eligible for asylum.  He maintains that, in addition to his actual opposition to Al-Shabaab, the terrorist group will impute such a political view to him because of his long residency in the United States.

The BIA aptly observed that Zhakira never fully developed a distinct political-opinion claim separate from his contention that he faced a likelihood of persecution as a Christian with ties to the United States.  That lack of development continues in his briefing to this court.  In a roughly one-page discussion, Zhakira asserts that "he possesses the political opinion of supporting the Kenyan government's unsuccessful attempts at ridding the country of Al-Shabaab," Petitioner's Br. at 19, but he acknowledges that he has taken "no actual political action," id., and he identifies no evidence indicating that Al-Shabaab would be

- 13 -

aware of his political views and "target[] [him] for that reason." Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010). Accordingly, there is no basis for overturning the agency's rejection of Zhakira's asylum claim based on his political opinion.

**3. Social Group.** To establish a right to asylum based on membership in a social group, a petitioner must show that the specified group is (1) composed of individuals "'who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'" Ramírez-Pérez, 934 F.3d at 51 (quoting Rivas-Durán, 927 F.3d at 30-31). "Particularity" means that "the group is 'discrete and ha[s] definable boundaries -- it must not be amorphous, overbroad, diffuse or subjective.'" Id. (alteration in original) (quoting Paiz-Morales v. Lynch, 795 F3d 238, 244 (1st Cir. 2015)). The "social distinction" requirement "refers to 'whether those with a common immutable characteristic are set apart, or distinct, from other persons within the society in some significant way.'" Id. (quoting Rivas-Durán, 927 F.3d at 31).

As noted, Zhakira identifies his proposed social group as "westernized/Americanized Christians supporting the international campaign against Al-Shabaab." Petitioner's Br. at 15; see also id. at 4. The BIA concluded that this group possessed neither particularity nor social distinction and, hence, is "too amorphous to be cognizable under the INA." Zhakira's challenge to

that determination could be deemed waived.  After stating in his brief that "[h]is westernized/Americanized Christian status cannot be changed and is immutable," Zhakira summarily asserts: "This status is also socially visible and sufficiently particular." Id. at 23.  We nonetheless briefly address the social-group claim, which can be resolved based solely on Zhakira's failure to satisfy the particularity requirement.  See, e.g., Aguilar-De Guillen v. Sessions, 902 F.3d 28, 36 (1st Cir. 2018) (holding that petitioner does not qualify for asylum based on membership in a social group "because she does not meet the particularity requirement").

Zhakira does not explain what attributes make an individual "westernized" or "Americanized," and, as framed, the proposed group is not limited to those who have lived in the United States.[4]  The "westernized/Americanized" characteristic is thus open to varying, subjective interpretations.  See, e.g., Ahmed v. Holder, 611 F.3d 90, 95 (1st Cir. 2010) ("Adjectives like 'secularized' and 'westernized' reflect matters of degree and, in the last analysis, such adjectives call for subjective value judgments.").  Indeed, the classification could include both grade-school children and retirees -- i.e., any Christian able to

---

[4] At oral argument, Zhakira's counsel seemed to suggest that Zhakira's proposed group consists only of Christian Kenyans who return to Kenya after lengthy residency in the United States and who also have U.S.-citizen children.  However, that is not the group he identifies in his brief and, accordingly, we do not consider those chacteristics.

form an opinion opposing Al-Shabaab's violence who manifests, in unspecified ways, "western" or "American" affinity. Briefly put, Zhakira's proposed group "lacks definable boundaries and 'is by definition too amorphous and overbroad to be particular.'" Ramirez-Pérez, 934 F.3d at 51 (quoting Paiz-Morales, 795 F.3d at 244).

Hence, Zhakira has not demonstrated entitlement to asylum based on a cognizable social group.

## C. Withholding from Removal and CAT Relief

To be eligible for withholding of removal, Zhakira would have to "show that it is 'more likely than not' that he would be persecuted on account of a protected ground if repatriated." Yong Gao v. Barr, 950 F.3d 147, 154 (1st Cir. 2020) (quoting 8 C.F.R. § 1208.16(b)(2)). We have repeatedly observed that "[a] petitioner who cannot clear the lower hurdle for asylum will necessarily fail to meet the higher bar for withholding of removal." Paiz-Morales, 795 F.3d at 245. Our resolution of Zhakira's asylum claim thus "also disposes of [his] withholding of removal claim." Ramírez-Pérez, 934 F.3d at 52. Zhakira presents essentially no argument on the denial of his request for CAT protection, and we therefore deem that claim waived.

For the foregoing reasons, the petition for review is denied. So ordered.