# United States Court of Appeals
## For the First Circuit

No. 19-2192

JOSÉ FRANCISCO LOJA-TENE,

Petitioner,

v.

WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Selya, and Barron,
<u>Circuit Judges</u>.

Daniel T. Welch and MacMurray & Associates on brief for petitioner.

Joseph H. Hunt, Assistant Attorney General, Civil Division, United States Department of Justice, Melissa Neiman-Kelting, Assistant Director, Office of Immigration Litigation, and Jacob Bashyrov, Attorney, Office of Immigration Litigation, on brief for respondent.

September 21, 2020

**SELYA**, **Circuit Judge**.  Judicial review of factbound agency determinations is narrowly circumscribed:  in immigration cases — as in other administrative-law contexts — a reviewing court must uphold the agency's factbound determinations as long as those determinations are supported by substantial evidence in the record, viewed as a whole.  See Pulisir v. Mukasey, 524 F.3d 302, 307 (1st Cir. 2008).  A straightforward application of this standard in the case at hand leads us to uphold the decision of the Board of Immigration Appeals (BIA) and, therefore, deny the petition for judicial review.

The petitioner, José Francisco Loja-Tene, is an Ecuadorian national.  He came to the United States without documentation in 2014, having left Ecuador for fear of harm at the hands of his adopted older brother (Angel).  The petitioner's remaining family — including his wife, mother, children, and three sisters — remain in Ecuador.

According to the petitioner, his brother has been involved in narcotics trafficking since the mid-1990s.  From that time forward, Angel periodically made unwelcome visits to the Loja-Tene family, during which he attempted to strong-arm the petitioner and his father into trafficking cocaine at Angel's behest.  Both men refused to cooperate, and Angel's ire mounted.  It escalated in 2011, when Angel reportedly murdered the petitioner's father.

After the father's murder, Angel continued to pressure the petitioner to traffick cocaine. These pressure tactics included a threat delivered at gunpoint. Frightened by his brother's threats, the petitioner left Ecuador to seek passage to the United States. As an added precaution, his wife and children relocated to Peru, and then moved again to a remote Ecuadorian village (where they remain in hiding).

Upon arriving in the United States, the petitioner applied for asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT), alleging that he feared his brother will torture or kill him should he return to Ecuador. His argument for asylum and withholding of removal centered on his allegation that he faces persecution based on his membership in a particular social group (his family unit). The petitioner's family is a cognizable social group, he says, because his alleged persecutor (Angel) only sought to recruit immediate relatives.

At a hearing before an immigration judge (IJ), the petitioner conceded removability and relied instead on his cross-applications for asylum, withholding of removal, and CAT protection. The petitioner testified in his own behalf. The IJ found him credible but determined that he had failed to substantiate any of his three claims. Of particular relevance here, the IJ found insufficient evidence that family membership

had sparked Angel's threats against the petitioner. On appeal, the BIA affirmed, and the petitioner responded by filing this timely petition for judicial review.

We start by narrowing the scope of our inquiry. Although the petitioner professes to challenge the BIA's rejection of his CAT claim, his challenge is cursory and largely undeveloped. Consequently, we deem the claim waived. See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010) (holding, in similar context, that "appellate arguments advanced in a perfunctory manner, unaccompanied by citations to relevant authority, are deemed waived").

This leaves the petitioner's asylum and withholding of removal claims. Our standards of review are familiar. In the immigration context, judicial review typically focuses on the final decision of the BIA. See Murillo-Robles v. Lynch, 839 F.3d 88, 91 (1st Cir. 2016). But when the BIA embraces the decision of the IJ, "merely add[ing] its gloss to the IJ's findings and conclusions, we treat the two decisions as one." Id. So it is here.[1]

We review the agency's legal conclusions in a removal proceeding de novo, "with some deference to the agency's reasonable interpretation of statutes and regulations that fall within its

---

[1] For ease in exposition, we sometimes use the term "the agency" to refer to the BIA and the IJ, collectively.

purview." Pulisir, 524 F.3d at 307. We treat the agency's factual findings more deferentially, applying the substantial evidence rule: we will uphold the agency's findings unless the record compels a contrary conclusion. See Lopez de Hincapie v. Gonzales, 494 F.3d 213, 218 (1st Cir. 2007).

With this backdrop in place, we turn first to the petitioner's claim for asylum. His initial foray is his claim that the agency misapplied a legal standard by failing to allow for the possibility of mixed-motive persecution.

We pause to put this claim into perspective. A refugee, like the petitioner, who seeks asylum resulting from either actual or feared persecution in his homeland bears the burden of showing that the persecution is on account of one of five statutorily protected grounds: "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Even so, the statutorily protected ground need not be the sole factor driving the alleged persecution: although an asylum applicant must establish that a statutorily protected ground is "'at least one central reason' for the [applicant's] persecution," it need not be the exclusive reason. Aldana-Ramos v. Holder, 757 F.3d 9, 18 (1st Cir. 2014) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). The language of the Immigration and Nationality Act "clearly contemplates the possibility that multiple motivations can exist, and that the presence of a non-

protected motivation does not render an applicant ineligible for refugee status."  Id. at 18-19.

In all events, the applicant retains the burden of demonstrating that he is being persecuted based on at least one statutorily protected ground.  See Lopez de Hincapie, 494 F.3d at 219 ("[I]t is the alien's burden to give the adjudicator some basis for differentiation in a given case." (citing Romilus v. Ashcroft, 385 F.3d 1, 7 (1st Cir. 2004))).  Here — contrary to the petitioner's characterization — the agency did not improperly preclude the possibility of mixed-motive persecution.  To the contrary, the IJ made pellucid that the petitioner had to demonstrate that kinship ties are "at least one central reason" for his persecution.  So, too, the BIA held that the petitioner did not establish a statutorily protected ground as "one of the motivating factors for why he and his father were [harmed] by his older brother."  (emphasis supplied).[2]

---

[2] To be sure, the BIA opinion contains a single sentence that may be read to misconstrue the legal standard.  It states at one point that "[w]e agree with the Immigration Judge that the evidence does not establish that [family membership was] the one central motive for the harm inflicted on the respondent."  Yet the body of the BIA's opinion (like the IJ's) makes clear that it understood that actions may be driven by more than one central motive. Viewed in this context, this is the type of isolated lapsus linguae to which we regularly have declined to give dispositive weight.  See Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1088 (1st Cir. 1993) ("If using the wrong word or phrase constituted grounds for reversal in every case, much too high a premium would be placed on sheer literalism.") cert. denied, 139 S. Ct. 1388 (2019); cf. United States v. Montañez-Quiñones, 911 F.3d 59, 66 (1st Cir. 2018)

Seen in this light, the agency's determination in this case is akin to the one we considered in Villalta-Martinez v. Sessions, 882 F.3d 20 (1st Cir. 2018). There, we concluded that the agency "explicitly acknowledged the possibility of a mixed-motive [persecution], but, based on the evidence presented, made a fact-specific determination that [the petitioner] had not shown that the persecution was motivated by a family relationship." Id. at 24. The same can be said here.

We also find unpersuasive the petitioner's argument that the agency erred in the substance of its factual findings. As we have indicated, our review of these findings must proceed under the "highly deferential" substantial evidence rule. Lopez de Hincapie, 494 F.3d at 218. This rule directs us not to disturb the agency's factbound determinations as long as those determinations are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4)).

The petitioner attempts to clear this high bar by submitting that "there is no other plausible explanation" for his

_____

(declining to give dispositive weight to prosecutor's misstatement when it did not "appear that the misstatement in any way affected the outcome of the proceedings"). Put simply, the totality of the agency's analysis plainly outweighs the lone misstatement and, therefore, the error was harmless.

persecution, except for family ties. This argument, though, reads the record through rose-colored glasses. Fairly read, the record contains probative evidence that, when due allowance is made for the agency's right to draw reasonable inferences from discerned facts, passes muster under the substantial evidence standard. Indeed, we have observed before — and today reaffirm — that "[t]he mere fact that [a persecutor] exclusively targeted [family] members" does not compel the logical inference that kinship motivated the threats. Marin-Portillo v. Lynch, 834 F.3d 99, 102 (1st Cir. 2016). Put another way, "the fact that the group is a family unit does not convert the non-protected criminal motivation into persecution on the basis of family connections." Aldana-Ramos, 757 F.3d at 19.

Here, there is more than enough evidence in the record to underpin the agency's conclusion that family ties did not motivate the petitioner's persecution, even though those ties may have brought him into proximity with his persecutor. Angel made menacing statements to both the petitioner and his father only after they refused to leverage their day-to-day access to potential drug clientele to Angel's behoof. Meanwhile, the petitioner's sisters, all three of whom work as homemakers, remain in Ecuador without having been subjected to similar threats. A reasonable adjudicator could interpret these facts — as the IJ did — to support the proposition that Angel persecuted the petitioner out

of greed, criminal intent, and vindictiveness, rather than on account of his family membership.

Finally, we come to the petitioner's claim that the agency improvidently denied his application for withholding of removal. Withholding of removal claims require a more rigorous level of proof than counterpart claims for asylum. See Aguilar-Solis v. INS, 168 F.3d 565, 569 n.3 (1st Cir. 1999) ("[A]sylum eligibility only requires a well-founded fear of persecution . . . while withholding of deportation requires a clear probability of persecution."). Given our reasons for concluding that the petitioner has failed to clear the lower hurdle erected for asylum seekers, his counterpart claim for withholding of removal "must necessarily fail." Villa-Londono v. Holder, 600 F.3d 21, 24 n.1 (1st Cir. 2010).

We need go no further.[3] For the reasons elucidated above, the petition for judicial review is

**Denied.**

---

[3] We note, in particular, that this case, in its present posture, does not present a fitting occasion to address the arguments raised with respect to the Attorney General's decision in Matter of L-E-A-, 27 I&N Dec. 581 (A.G. 2019). Those arguments go only to the conditions under which a family unit can be found to constitute a cognizable social group — an issue that we need not reach.