# United States Court of Appeals
## For the First Circuit

No. 19-1994

JOSE CECILIO RUIZ-VARELA,

Petitioner,

v.

WILLIAM P. BARR,
United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Kayatta, <u>Circuit Judge</u>,
Casper,[*] <u>District Judge</u>.

<u>Randy Olen</u> for petitioner.
<u>Julia J. Tyler</u>, Trial Attorney, Office of Immigration Litigation, with whom <u>Ethan P. Davis</u>, Acting Assistant Attorney General, Civil Division, and <u>Jennifer P. Levings</u>, Senior Litigation Counsel, were on brief for respondent.

December 23, 2020

---

[*] Of the District of Massachusetts, sitting by designation.

**Casper, District Judge.** Petitioner Jose Cecilio Ruiz-Varela ("Ruiz"), a native and citizen of Honduras, seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA"), dismissing his appeal from the decision of an immigration judge ("IJ") denying his request for withholding of removal under Section 241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3). Having concluded that there was substantial evidence to support the BIA's decision to deny Ruiz's application for withholding of removal where he failed to establish the required nexus between his treatment by the police and his membership in a particular social group (here, his immediate family), the Court denies the petition for review.

## I.

Ruiz initially entered the United States in 2001. Agents of Immigration and Customs Enforcement ("ICE") encountered him here in 2009 and because he was in the country illegally, he was placed in removal proceedings. As a result, Ruiz accepted voluntary departure and returned to Honduras in 2009.

Once back in his hometown in Honduras, Ruiz worked in construction, but often worked at his father's pool hall. Although they had other family members in the area, the only family members to work there were Ruiz and his father. His father's establishment, located in the front part of the residence Ruiz

- 2 -

shared with his parents, was very successful and was frequented by neighbors, friends, family and members of the National Police.

Sometime after his return, members of the National Police made extortionate demands for money in exchange for "protection." Neither Ruiz nor his father thought his father should pay these demands and they were not going to pay even after the threats continued. Even after the police at some point threatened to kill his son, Ruiz's father refused the demands and told the officers that he was going to report them and expose their scheme.

Sometime after this response, in late 2011, Ruiz was returning home at night with a friend on the friend's motorcycle from a party nearby. They came upon a roadblock guarded by military and local police. As they proceeded through the roadblock without stopping, Ruiz recognized some of the officers there as those who had attempted the extortion. According to Ruiz, these officers saw them and immediately opened fire at them, firing approximately six shots. In response, his friend sped up on the motorcycle and the officers then fired fifty to seventy more rounds at the two until they fell off the motorcycle. While on the ground, officers began to hit and kick them, pointing their weapons at them, ceasing to do so eventually as bystanders gathered and protested. As a result, Ruiz suffered a gunshot wound to his foot and injuries to his ribs, chest and shoulder and was hospitalized. Although Ruiz was initially charged, as the police alleged the two men had been

armed and had shot at them, the charges against him were dropped. The local government investigated the incident, and as a result some changes were made within the police, including the removal of many of the officers from their posts. Ruiz claimed, however, that these developments stirred a strong reprisal from the police against him and his father. Over the course of the next year, the officers continued with their threats, but the pool hall remained open, operated solely by his father during Ruiz's recuperation. On one occasion, two officers came to his father's business and one pointed out Ruiz to the other and said "look, he is one of the ones I told you about." Ruiz also claimed that he was followed by police and that officers had told the owners of a gasoline station near the checkpoint that Ruiz and his friend had tried to rob their business, prompting the owners to threaten to kill them.

In November 2012, approximately a year after the checkpoint incident, Ruiz decided to leave his home country again for the United States because of his fear of police reprisals. He entered the United States illegally but did not come to the attention of immigration authorities until after an arrest by the Smithfield, Rhode Island Police in January 2019. On January 31, 2019, the U.S. Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") charging Ruiz with removability. In response, Ruiz conceded removability, but sought withholding of removal under the

Convention Against Torture and withholding of removal under INA Section 241(b)(3).

After considering the testimony of Ruiz, the sole witness, and the exhibits admitted, the IJ denied the petition for withholding of removal on April 22, 2019. The IJ noted that he had "significant concerns regarding [Ruiz's] credibility," but given corroborative evidence including medical records reflecting his hospitalization for a shooting, he would give Ruiz "the benefit of the doubt" and "assume [he] was a credible witness." Even doing so, the IJ concluded that Ruiz had failed to show the necessary nexus between past persecution and any clear probability that his life or freedom would be harmed in the future on a protected ground under INA Section 241(b)(3). Although recognizing that being shot by the police at the checkpoint would be a persecutory act, the IJ concluded that the nexus to Ruiz's family status was missing where, even as recounted by Ruiz, the cause of the police's conduct at the checkpoint was not clear. The IJ noted the same deficiency as to the later visit by two officers. The IJ recognized that family members may constitute a particular social group for the purposes of removal under Section 241(b)(3), but could not conclude "that the evidence indicates that the police officers had animus against [Ruiz] based on his biological ties." His father continued to live in his hometown, running the same pool hall, and his mother and siblings continued to live in the area without incident.

Although Ruiz stressed that he was the only family member who worked with his father in the pool hall, the IJ found that to be an insufficient basis for claiming persecution based on family membership. Instead, he concluded that "one central reason" Ruiz may have been targeted was because of the extortion and demands, but also because the police thought that Ruiz and his friend were running the roadblock, neither of which was a protected ground. Accordingly, the IJ concluded that Ruiz had failed to sustain his burden of showing that he was targeted on account of family membership, a protected ground.[1]

On September 5, 2019, the BIA affirmed the IJ's ruling. While not reaching every issue in the case, the BIA agreed with the IJ that Ruiz had not sustained his burden for withholding of removal under INA Section 241(b)(3). In relevant part, the BIA agreed that he had not established that his family membership was a central reason for his claimed persecution by local police. On this point, the BIA observed that while corrupt officers may have attempted to extort money from him and his father, Ruiz had not identified any evidence indicating a particular animus toward his

_____

[1]The IJ made other findings rejecting Ruiz's challenge to the service of the NTA, his claim for withholding of removal under Section 241(b)(3) based upon political opinion, his argument that the Honduran government was unwilling or unable to control his persecutors, and Ruiz's petition for protection under CAT, all of which Ruiz does not challenge in this appeal.

- 6 -

family.  Citing that his mother and siblings continued to live in the same area without incident, the targeting of the two, the only family members working at the business, suggests that they were targeted for their wealth by the corrupt officers seeking extortionate payments.  Accordingly, the BIA affirmed the IJ's decision denying withholding of removal.

Ruiz now brings this timely appeal of the BIA's denial of his petition for withholding of removal under INA Section 241(b)(3).

## II.

This Court reviews the BIA's legal conclusions *de novo*, but applies the more deferential, substantial evidence standard to its factual findings.  Soeung v. Holder, 677 F.3d 484, 487 (1st Cir. 2012).  The Court accepts the agency's factfinding if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  Guzman v. INS, 327 F.3d 11, 15 (1st Cir. 2003) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).  That is, we will not reverse unless, viewing the record as a whole, "any reasonable adjudicator would be compelled to conclude to the contrary."  Ahmed v. Holder, 765 F.3d 96, 100 (1st Cir. 2014) (quoting 8 U.S.C. § 1252(b)(4)(B)).  As this Court has recently noted, "judicial review typically focuses on the final decision of the BIA."  Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020).  "But when the BIA embraces the decision of the IJ, 'merely add[ing] its gloss to the IJ's findings and conclusions,

- 7 -

we treat the two decisions as one.'" Id. (quoting Murillo-Robles v. Lynch, 839 F.3d 88, 91 (1st Cir. 2016)); see Piedrahita v. Mukasey, 524 F.3d 142, 144 (1st Cir. 2008) (noting that when "the BIA adopts the IJ's opinion and discusses some of the bases for the IJ's decision, we have authority to review both the IJ's and the BIA's opinions" (quoting Ouk v. Gonzales, 464 F.3d 108, 110 (1st Cir. 2006))). Accordingly, this Court does so here.

## III.

The Court concludes that the BIA's finding that Ruiz failed to show the requisite nexus between the persecution by the local police and his family membership is supported by substantial evidence. A petitioner is eligible for withholding of removal to his home country if his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). Specifically, the petitioner bears the burden of showing that he suffered past persecution or, that in the absence of past persecution, it is more likely than not that he will be persecuted in the future "on account of" one of the protected grounds. 8 C.F.R. § 1208.16(b); see Yong Gao v. Barr, 950 F.3d 147, 154 (1st Cir. 2020). One of the protected grounds must be "at least 'one central reason' for his persecution." Tay-Chan v. Holder, 699 F.3d 107, 111 (1st Cir. 2012) (citing 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(C)). Here, Ruiz contends

- 8 -

that the BIA erred in affirming the IJ's finding that he failed to show that he faced persecution on account of his membership in a particular social group, namely, his immediate family.

Social group membership, including membership in an immediate family, may be grounds for withholding of removal under INA Section 241(b)(3) if the petitioner suffered or will more likely than not suffer future persecution because of his or her membership. See Aldana-Ramos v. Holder, 757 F.3d 9, 15 (1st Cir. 2014); Gebremichael v. INS, 10 F.3d 28, 36 (1st Cir. 1993). Such family membership need not be the only reason for persecution, but it must be a central reason for persecution, Aldana-Ramos, 757 F.3d at 18, as the BIA recognized. Whether cast as the Ruiz-Varela family (as the government contends is the only basis asserted by Ruiz below) or as his father's son (which Ruiz has cast as synonymous for the family relationship upon which he relies), Ruiz fails to establish a nexus between the police persecution of him and his family status. Villalta-Martinez v. Sessions, 882 F.3d 20, 24-25 (1st Cir. 2018) (concluding that the record did not compel a contrary outcome where the BIA found insufficient evidence that extortion was motivated by petitioner's relationship with her child's father); Loja-Tene, 975 F.3d at 61 (noting that "a reviewing court must uphold the agency's factbound determinations as long as those determinations are supported by substantial evidence in the record, viewed as a whole").

Ruiz's mother and siblings continued to reside in the area without incident.[2]  Although they shared the familial connection, only Ruiz worked with his father in the pool hall, was often present when the police made their (unsuccessful) demands and shared his father's belief that protection money should not be paid to the police.  Even if the police only extorted his father, there was still substantial evidence to support the BIA's finding regarding lack of the requisite nexus.  That the local police had other ready, familial targets who lived as close as the residence attached to the pool hall (i.e., Ruiz's mother) to threaten to pressure Ruiz's father into submitting to their demands and did not do so, supports that his status as a family member was not a central reason for the persecution of Ruiz.  Loja-Tene, 975 F.3d at 62 (finding substantial evidence for conclusion that family ties did not motivate persecution where persecutor made threats to petitioner and her father, but sisters remained in the country

_____

[2]Although the record is silent about whether the local police knew that Ruiz's father had family in the area other than Ruiz, it is not a reasonable inference from this record that they did not. Mediouni v. INS, 314 F.3d 24, 27 (1st Cir. 2002) (noting that BIA findings and conclusions must be "based on inferences or presumptions that are . . . reasonably grounded in the record, viewed as a whole . . ." (quoting Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st Cir. 1994))).  The record reflects that Ruiz's mother lived with Ruiz and his father behind the pool hall, his siblings lived nearby, both his family and the local police frequented the pool hall and Ruiz noted that his family members were at the hospital, along with the police, in the wake of the roadblock incident.

without having been subjected to similar threats).  Moreover, as the IJ noted and the record otherwise reflects, it is not clear that the police conduct when Ruiz and his friend went through the nighttime checkpoint, or when an officer later pointed out Ruiz to another officer, was because of the refusal to submit to the officers' extortionate demands or, rather, because Ruiz had run a roadblock.  Even if Ruiz and his father believed it to be because of his family relationship, we cannot say that the record compels a different outcome than the one that the BIA reached here.  Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012).

For the aforementioned reasons, the petition for review is **denied**.