# United States Court of Appeals

## For the First Circuit

No. 21-1117

MIGUEL JIMENEZ-PORTILLO, HUGO DANILLO TORRES-PORTILLO, and
RACHEL IRA-TORRES,

Petitioners,

v.

MERRICK B. GARLAND,<sup>*</sup>
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
Selya and Kayatta, Circuit Judges.

Steve J. Gutherz on brief for petitioners.
Brian M. Boynton, Acting Assistant Attorney General, Civil
Division, United States Department of Justice, Anthony C. Payne,
Assistant Director, Office of Immigration Litigation, and Lance L.
Jolley, Trial Attorney, Office of Immigration Litigation, on brief
for respondent.

---

<sup>*</sup> Pursuant to Fed. R. App. P. 43(c)(2), Attorney General
Merrick B. Garland has been substituted for former Acting Attorney
General Robert Montague Wilkinson as the respondent.

December 27, 2022

**SELYA**, **Circuit Judge**.  The rule that an agency's determination of a disputed question of fact must stand so long as that determination is supported by substantial evidence presents a formidable barrier to those who challenge such a determination.  This case illustrates the point.  Concluding, as we do, that the final decision of the Board of Immigration Appeals (BIA) rests upon a fact-based determination that is supported by substantial evidence in the record as a whole, we deny the petition for review.

**I**

The Immigration Judge (IJ) found the petitioners generally credible, so we draw the facts largely from their testimony.  See Rodríguez-Villar v. Barr, 930 F.3d 24, 25 (1st Cir. 2019).

Petitioners Miguel Jimenez-Portillo, Hugo Danillo Torres-Portillo, and Rachel Ira-Torres are El Salvadoran nationals.  Jimenez-Portillo and Ira-Torres are married, and Jimenez-Portillo and Torres-Portillo are brothers.  All three petitioners came to the United States, without inspection, in 2015, having left El Salvador for fear of harm at the hands of the Mara Salvatrucha 18 gang.[1]

---

[1] The record is tenebrous as to which specific gang may have caused the petitioners' harm.  When testifying, the petitioners referred to the gang as "Eighteen" and "MS-18."  In their brief, however, the petitioners refer to the gang as "Mara Salvatrucha 18," which — based on other evidence in the record — could potentially implicate two different gangs:  Mara Salvatrucha ("MS-

According to the petitioners, they lived in an area of El Salvador where gang activity was prevalent. Jimenez-Portillo operated a small store out of the family's home. In January of 2015, two members of Mara Salvatrucha 18 — one of whom the petitioners identified as Kevin Alexander Masariegos — visited the store and demanded that Jimenez-Portillo assist the gang by hiding their weapons on the premises. Jimenez-Portillo refused, and the gang members warned him that "not collaborating with us [] has consequences."[2]

A few days later, Masariegos and other gang members returned to the store. This time, the gang members assaulted Jimenez-Portillo, breaking a tooth in the process.

The protagonists had no further contact until September of 2015, when Masariegos (accompanied by another gang member) returned to the store. Masariegos held Jimenez-Portillo at gunpoint and told him that the gang members had "orders from the penitentiary to kill" the petitioners. He specifically noted that Masariegos said that the gang would murder "me, the bitch that is

_____

13") or the Eighteenth Street ("M18"). For present purposes, we use the same nomenclature as the petitioners use in their brief.

[2] At the time of this incident, Masariegos was a known quantity (at least to Ira-Torres). Years before Ira-Torres met Jimenez-Portillo, Masariegos had courted Ira-Torres. She rejected Masariegos's advances, and he not only beat her but also threatened to kill her.

- 4 -

my wife, and my brother." The petitioners reported these threats to the El Salvadoran police and then fled to the United States.

Shortly thereafter, the petitioners learned that Jimenez-Portillo's grandmother had been slain in her store. The petitioners testified that "gang members" killed her by shooting her fifteen or sixteen times. The petitioners did not identify the gang to which the assailants belonged, and the record contains no identifying evidence.

The petitioners were detained by United States Customs and Border Patrol agents in November of 2015. Immigration officials determined that the petitioners had a credible fear of persecution in El Salvador and paroled them into the United States.

In due course, the Department of Homeland Security instituted removal proceedings, charging each petitioner as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I). The petitioners conceded removability but cross-applied for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT). See 8 U.S.C. § 1158; id. § 1231(b)(3); 8 C.F.R. § 1208.16-.18. In support, the petitioners alleged that they had suffered past persecution on account of their membership in a particular social group: their family. See Ruiz v. Mukasey, 526 F.3d 31, 38 (1st Cir. 2008) ("Kinship can be a sufficiently permanent and distinct characteristic to serve as the linchpin for a protected social group within the purview of the asylum laws.").

They also alleged that they feared torture in El Salvador should they be repatriated.

The petitioners' cases were consolidated for hearing before an IJ in October of 2018. The IJ found that the petitioners were generally credible, notwithstanding "minor discrepancies." Even so, the IJ rejected the petitioners' claims for relief. Of particular pertinence for present purposes, the IJ denied the petitioners' asylum claim because they had neither shown persecution nor shown that family membership was "one central reason" for the persecution they claimed to have suffered in the past and feared in the future.

The BIA affirmed the IJ's rejection of the petitioners' claims. With respect to the asylum claim, the BIA agreed with the IJ that "the problems the [petitioners] experienced in El Salvador with gang members were motivated by criminal reasons" not "family ties." Thus, the petitioners had failed to show that the claimed persecution bore a nexus to a protected ground.

This timely petition for judicial review followed.

## II

In this venue, the petitioners do not renew their claims for withholding of removal or CAT protection. Those claims are, therefore, waived. See Rotinsulu v. Mukasey, 515 F.3d 68, 71 (1st Cir. 2008); see also United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 6 -

This leaves the petitioners' asylum claim. "In the immigration context, judicial review typically focuses on the final decision of the BIA." Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020). But "[w]here, as here, the BIA adopts and affirms an IJ's decision 'while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit.'" Villafranca v. Lynch, 797 F.3d 91, 94 (1st Cir. 2015) (quoting Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012)).

When conducting this analysis, we review the agency's answers to questions of law de novo, giving "some deference to the agency's reasonable interpretation of statutes and regulations that fall within its purview." Pan v. Gonzales, 489 F.3d 80, 85 (1st Cir. 2007). We afford greater deference to the agency's factual determinations, applying the venerable "substantial evidence rule." Loja-Tene, 975 F.3d at 61. Under this rule, we must uphold the agency's fact-bound determinations "as long as those determinations are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. at 62 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)).

**A**

The petitioners first complain that the agency misapplied a legal standard by failing to allow for the possibility of a mixed-motive persecution. This plaint presents a question of

law and, therefore, engenders de novo review.  See Pan, 489 F.3d at 85.

Some context helps to put this plaint into perspective. To qualify for asylum, an asylum-seeker must establish that he is a "refugee" within the meaning of the immigration laws.  Urgilez Mendez v. Whitaker, 910 F.3d 566, 570 (1st Cir. 2018); see 8 U.S.C. § 1158(b)(1).  "A refugee is someone who cannot or will not return to his homeland 'because of [past] persecution or a well-founded fear of [future] persecution on account of'" one of five statutorily protected grounds:  "race, religion, nationality, membership in a particular social group, or political opinion." Urgilez Mendez, 910 F.3d at 570 (quoting 8 U.S.C. § 1101(a)(42)(A)).

It is common ground that an asylum-seeker must carry the burden of showing that persecution is "on account of" a protected ground.  Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007).  This means, of course, that the asylum-seeker must show that there is a "nexus" between the harm suffered and the protected ground.  Rodríguez-Villar, 930 F.3d at 27.  Withal, "the statutorily protected ground need not be the sole factor driving the alleged persecution."  Loja-Tene, 975 F.3d at 61.  Instead, the statutorily protected ground need only be "'one central reason' for the [asylum-seeker's] persecution."  Aldana-Ramos v. Holder, 757 F.3d 9, 18 (1st Cir. 2014) (quoting 8 U.S.C.

- 8 -

§ 1158(b)(1)(B)(i)).  After all, "[t]he language of the Immigration and Nationality Act 'clearly contemplates the possibility that multiple motivations can exist, and that the presence of a non-protected motivation does not render an [asylum-seeker] ineligible for refugee status.'"  Loja-Tene, 975 F.3d at 61 (quoting Aldana-Ramos, 757 F.3d at 18-19).

Although the petitioners identify the correct legal standard, their claim of error fails because the record does not support their assertion that the agency spurned the possibility of a mixed-motive theory of persecution.  The IJ made pellucid that the petitioners only had to "show that a protected ground is 'one central reason' for the persecution they fear or suffered in the past."  What is more, the IJ explicitly denied the petitioners' asylum claim because they had failed to satisfy that requirement.  The BIA decision was of a piece with the IJ's decision:  the BIA determined that the petitioners had "not demonstrate[d] a nexus between the claimed persecution and a protected ground."

Seen in this light, the IJ's and BIA's decisions take due account of the possibility of mixed motives.  Indeed, those decisions mirror the decision we upheld in Villalta-Martinez v. Sessions, 882 F.3d 20 (1st Cir. 2018).  There, the petitioners claimed that the BIA had failed to consider the possibility of a mixed-motive case.  See id. at 22-24. Quoting the IJ's decision, we observed that the IJ had found that the petitioner "ha[d] not

- 9 -

established that <u>one</u> of the reasons she was targeted was because of her [familial] relationship" to another individual. <u>Id.</u> at 24. (emphasis in original). We held that this language showed that "[t]he IJ and thus the BIA explicitly acknowledged the possibility of a mixed-motive case, but, based on the evidence presented, made a fact-specific determination that [the petitioner] had not shown that the persecution was motivated by a family relationship." <u>Id.</u> The same is true here. It follows, then, that the IJ and the BIA applied the appropriate mixed-motive standard.

## B

This brings us to the petitioners' fallback claim: that the agency erred by finding that familial membership was not a central reason for the alleged persecution. Whether a protected ground is one central reason for an asylum-seeker's persecution is ordinarily a question of fact, <u>see</u> <u>Singh</u> v. <u>Mukasey</u>, 543 F.3d 1, 4 (1st Cir. 2008), and it is a question of fact in this case. Consequently, our inquiry reduces to whether the agency's determination is supported by substantial evidence. <u>See</u> <u>Lopez de Hincapie</u>, 494 F.3d at 218. And as we have said, in making that assessment we must honor the agency's findings of fact as long as those findings "are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" <u>Loja-Tene</u>, 975 F.3d at 62 (quoting <u>Elias-Zacarias</u>, 502 U.S. at 481).

In reviewing for substantial evidence, we may not upset the BIA's decision even if "the record supports a conclusion contrary to that reached by the BIA." Lopez de Hincapie, 494 F.3d at 218 (emphasis in original). Reversal is warranted only if the record "compel[s] the contrary conclusion." Id. (emphasis in original); see Aguilar-Solis v. INS, 168 F.3d 565, 569 (1st Cir. 1999) (explaining that record evidence must "compel a reasonable factfinder to make a contrary determination").

With this plinth in place, we turn to the case at hand. The IJ denied the petitioners' asylum claim after hearing their testimony and considering the other record evidence. The petitioners had the burden of proving their claim of persecution. See Moreno v. Holder, 749 F.3d 40, 44 (1st Cir. 2014). The IJ found that they had failed to carry that burden: she found that the petitioners were "unable to show that . . . the harm that [they] experienced [constituted] past persecution on account of family membership." Similarly, she found that the petitioners had not "demonstrated that family . . . is one central reason for their fear of future persecution." The BIA adopted these findings.

This determination — that family membership was not a central reason for the petitioners' persecution — is supported by substantial evidence on the record as a whole. Reasonable, substantial, and probative evidence in the record supports the agency's determination that family ties did not drive the

- 11 -

petitioners' persecution. The record reveals that — in January of 2015 — gang members approached Jimenez-Portillo and demanded that he hide weapons in his store. He refused — and it was only after his refusal that the gang members threatened that his failure to cooperate would have "consequences." The gang members did not link the threat to anything other than Jimenez-Portillo's refusal to become complicit in the concealment of weapons.

The same theme was sounded when gang members returned to the store a few days later. They assaulted Jimenez-Portillo, but they did or said nothing that linked the assault to his family in any way. And when asked on cross-examination whether he "[was] beaten that day because [he] refused to collaborate and for no other reason . . . ?", Jimenez-Portillo agreed. This evidence firmly supports the conclusion that the gang targeted Jimenez-Portillo because he refused to assist their criminal enterprise.

A like conclusion may be drawn regarding the death threat. Jimenez-Portillo testified that when gang members returned to his store in September of 2015, they told him that they had "orders from the penitentiary to kill" the three petitioners because he "didn't want to collaborate." Jimenez-Portillo testified that he believed that the orders came directly from "bosses in the gangs." Based on this evidence, the IJ reasonably could have concluded — as she did — that the gang members meant exactly what they said: that the death threat was

in retaliation for Jimenez-Portillo's earlier refusal to accede to the gang's weapon-concealment demand. See Arévalo-Girón v. Holder, 667 F.3d 79, 83 (1st Cir. 2012) (affirming denial of withholding of removal claim because evidence suggested that gang's interest in petitioner was "trigger[ed]" by criminal activity, not social group membership); see also Orellana-Recinos v. Garland, 993 F.3d 851, 858-59 (10th Cir. 2021) (affirming denial of asylum claim because agency could have found that threat against petitioner's family was motivated solely by petitioner's failure to knuckle to gang's demands).

The petitioners resist these conclusions and argue that the record compels a contrary conclusion.[3] In support, the petitioners point to their grandmother's murder. Specifically, they cite the brutality of the murder and the fact that it occurred shortly after they fled from El Salvador. These bits of information, they insist, show that her death was not a "coincidence" but, rather, occurred because the gang was seeking "revenge against the[ir] family." Along this line, Jimenez-Portillo testified that his grandmother was killed as a proxy,

---

[3] The petitioners do not develop any arguments suggesting that the "nexus" analysis should differ among the three petitioners. For example, they do not argue that the gang threatened to kill Torres-Portillo "on account of" his relationship to Jimenez-Portillo. Consequently, any such arguments are waived. See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010); Zannino, 895 F.2d at 17.

- 13 -

that is, "because they couldn't kill [him]." So, too, Ira-Torres testified that she thought that the gang had killed Jimenez-Portillo's grandmother for "revenge" because the gang members "couldn't find [Jimenez-Portillo]." Refined to bare essence, the petitioners argue that the grandmother's murder demonstrates that the gang harbored an animus toward the petitioners' family that it took out on the murdered woman when it could not take that animus out on the petitioners.

Even assuming for argument's sake that the petitioners' theory is plausible — a matter on which we take no view — the record as a whole does not compel the conclusion that the killing took place because of family membership. One primary reason is that the record contains no evidence at all as to who killed the petitioners' grandmother. Ira-Torres testified that she did not know which gang was responsible for the murder, nor did she know the identity of the murderer. Similarly, Jimenez-Portillo testified that he did not know who killed his grandmother; all he knew was that the killers were "gang members" — but he could not identify the gang to which they belonged. To cinch the matter, the petitioners proffered no evidence sufficient to support a finding that their grandmother was killed by the same gang that had threatened Jimenez-Portillo for refusing to cooperate.

That ends this aspect of the matter. Overcoming the substantial evidence rule requires more than guesswork or hunch.

And when an asylum-seeker does not "know[] who was responsible" for a killing, "it is no more than a guess that a nexus existed between the [killing] and a statutorily protected ground." López-Castro v. Holder, 577 F.3d 49, 53 (1st Cir. 2009). So it is here.

We are equally unpersuaded by the petitioners' argument that evidence of Masariegos's past romantic interest in Ira-Torres, coupled with the prior assault that he perpetrated against her, compels the conclusion that the harm suffered by the petitioners was on account of their family membership. The premise of this argument is that Masariegos and his fellow gang members demanded that Jimenez-Portillo hide weapons because Masariegos was jealous of the relationship between Jimenez-Portillo and Ira-Torres. Building on this premise, the petitioners suggest that the beating of Jimenez-Portillo in January of 2015 was motivated — at least to some degree — by Masariegos's jealousy.

The premise on which this theory rests is belied by the record. The linchpin of the premise is that Masariegos — in the petitioners' words — "was well aware of [Ira-Torres's] relationship with [Jimenez-Portillo] when he demanded [Jimenez-Portillo] store guns" for the gang. But this linchpin erodes when scrutinized: the beating occurred in January of 2015 but Ira-Torres and Jimenez-Portillo both testified, without contradiction in the record, that they did not begin their relationship until February of that year. This temporal incongruity is telling. In

order for a nexus to exist between persecution and a protected ground, "[t]here must be evidence that the would-be persecutors knew of the [protected ground] and targeted the [asylum-seeker] for that reason." Mendez-Barrera v. Holder, 602 F.3d 21, 27 (1st Cir. 2010) (emphasis in original). Because Jimenez-Portillo and Ira-Torres were not yet in a relationship in January of 2015, Masariegos could not have targeted them at that time on the basis of a familial connection.

To sum up, the best face that the petitioners can put on the record is that the BIA's findings may not represent the only plausible interpretation of the record. But that does not take the petitioners where they want to go: "[g]iven two plausible but conflicting inferences from a body of evidence, the BIA's choice between those inferences is by definition supported by substantial evidence." Ruiz, 526 F.3d at 37. We hold, therefore, that the agency's fact-based determination — that the petitioners failed to show a nexus between their claimed persecution and their family membership — is supported by substantial evidence in the record. It follows that we must uphold the BIA's decision.

**III**

We need go no further. The substantial evidence rule is not petitioner-friendly, and the petitioners here have failed to

bring their case outside the rule's force field.  Thus — for the reasons elucidated above — the petition for judicial review is

**<u>Denied</u>**.