# United States Court of Appeals
## For the First Circuit

No. 23-1717

GERSON ADONAY CORTEZ-MEJIA, DORA ALICIA MEJIA-DE CORTEZ,
D.G.C.M., and K.A.C.M.,

Petitioners,

v.

MERRICK B. GARLAND,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, <u>Chief Judge</u>,
Selya and Montecalvo, <u>Circuit Judges</u>.

<u>Robert M. Warren</u> on brief for petitioners.
<u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney
General, Civil Division, United States Department of Justice,
<u>Daniel E. Goldman</u>, Senior Litigation Counsel, Office of
Immigration Litigation, and <u>Nicole J. Thomas-Dorris</u>, Trial
Attorney, Office of Immigration Litigation, on brief for
respondent.

November 15, 2024

**SELYA**, **Circuit Judge**.   Gerson Adonay Cortez-Mejia (Cortez), his wife, and their two minor children are natives and citizens of El Salvador.  They petition for judicial review of a final order of removal issued by the Board of Immigration Appeals (BIA), which affirmed the denial of their applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture (CAT).  We conclude that the BIA's order is supported by substantial evidence and, therefore, deny the petition for review.

## I

We briefly rehearse the relevant facts and travel of the case.  Because the Immigration Judge (IJ) found the petitioners generally credible, we draw the facts largely from the petitioners' testimony at their merits hearing.  See Jimenez-Portillo v. Garland, 56 F.4th 162, 164 (1st Cir. 2022); Rodríguez-Villar v. Barr, 930 F.3d 24, 25 (1st Cir. 2019).

The petitioners — Cortez, Dora Alicia Mejia-De Cortez (Mejia), and their two minor children, D.G.C.M. and K.A.C.M. — are Salvadoran nationals.  Cortez and one of the children (D.G.C.M.) came to the United States, without inspection, in July of 2015; Mejia and the other child (K.A.C.M.) followed in August of 2016.

The Department of Homeland Security initiated removal proceedings against all four petitioners in due course.  The petitioners conceded removability, but cross-applied for asylum,

withholding of removal, and protection under the CAT. The petitioners claimed that they feared returning to El Salvador due to persecution they experienced there on account of being "El Salvadorans caught between rival gangs and accused of working with the rival gang based on their work and home locations where the government will not protect them from the persecutor."

At the merits hearing, Cortez testified that his family lived in a neighborhood controlled by the MS-13 gang. His place of employment — a funeral home — was also located in an area controlled by the MS-13 gang. His job, however, required him to travel daily to a workshop that was in an area controlled by a rival gang: the 18-gang.

Members of the 18-gang sought to recruit Cortez so that he would feed them information about the MS-13 gang. When Cortez refused, they threatened to kill him if he did not join their cause. Cortez also testified that — around the same time — three MS-13 gang members went to his home to ask for him. When his father told them that he was not there, they left without threatening or harming anyone.

In early 2015, Cortez was on his way home when "three men showed [him] their guns" and threatened him unless he agreed to join them. Cortez was so fearful that he returned to work and stayed in the funeral home for two weeks. Following a brief return

home, he and his daughter repaired to a friend's house before leaving El Salvador for the United States.

Mejia, too, felt threatened. She testified that a man came to her home in El Salvador in August of 2016 and told her that the 18-gang wanted to kill her and her son. The next day, Mejia received a telephone call from an 18-gang member. The caller accused Mejia of passing information to the MS-13 gang. He also told her that she had twenty-two minutes to leave her home; elsewise, they would kill her and her son. Mejia and her son departed from their home in haste and stayed with a neighbor for two days before leaving El Salvador for the United States.

Cortez and his family were never physically harmed by any gang members while in El Salvador. Nor did the petitioners report any of the encounters or threats to the police.

In October of 2019, the IJ denied the petitioners' applications for relief. Although the IJ deemed the petitioners credible, she determined that they had failed to demonstrate that they were statutorily eligible for asylum because they had not established past persecution or a well-founded fear of future persecution on account of a statutorily protected ground.

Among other things, the IJ observed that the petitioners were threatened by gang members but "never harmed physically or detained by gang members o[r] anyone else in El Salvador." These experiences, the IJ determined, "d[id] not 'rise above

- 4 -

unpleasantness, harassment, and even basic suffering'" (quoting Rebenko v. Holder, 693 F.3d 87, 92 (1st Cir. 2012)).  As for a well-founded fear of future persecution, the IJ noted that the petitioners "fear[ed] general gang violence" and failed to carry "their burden of establishing that any fear of future harm is on account of a protected ground."

The IJ further determined that because the petitioners had failed to demonstrate eligibility for asylum, they also failed to demonstrate eligibility for withholding of removal.  See Singh v. Mukasey, 543 F.3d 1, 7 (1st Cir. 2008) (stating that petitioner's withholding-of-removal claim "necessarily fail[s]" to meet "higher threshold" if petitioner failed to meet lower standard for counterpart asylum claim).  And inasmuch as the record did not "support[] the conclusion that it is more likely than not that the [petitioners] would be singled out and tortured by, or with the acquiescence of, the government of El Salvador" upon their return, the petitioners had failed to demonstrate eligibility for CAT protection.

The petitioners appealed to the BIA, but the BIA dismissed their appeal.  The BIA held that although the petitioners had claimed that "they were threatened on numerous occasions by gang members," those experiences, "cumulatively considered, [did not] rise to the level of past persecution" (citing Santos Garcia v. Garland, 67 F.4th 455, 461 (1st Cir. 2023)).  Similarly, the

BIA held that the petitioners had not established a well-founded fear of future persecution because "they ha[d] not established a nexus between a protected ground and their fear of general gang violence." The BIA noted that the petitioners had failed to "articulate[] a cognizable particular social group." Finally, the BIA determined that the petitioners had failed to establish eligibility for withholding of removal and that they had "not meaningfully pursued a claim to protection under the CAT."

This timely petition for judicial review followed.

## II

In this venue, the petitioners challenge the BIA's denial of their applications for asylum and withholding of removal.[1] Our review of such a denial typically focuses on the final decision issued by the BIA. See Loja-Tene v. Barr, 975 F.3d 58, 60 (1st Cir. 2020). But "[w]here, as here, the BIA adopts and affirms [the decision of the IJ] 'while adding its own gloss, we review both the IJ's and the BIA's decisions as a unit.'" Villafranca v. Lynch, 797 F.3d 91, 94 (1st Cir. 2015) (quoting Jianli Chen v. Holder, 703 F.3d 17, 21 (1st Cir. 2012)).

---

[1] In a two-sentence paragraph, the petitioners also purport to challenge the denial of their CAT claims. But their challenge is fatally undeveloped and, thus, waived. See Ahmed v. Holder, 611 F.3d 90, 98 (1st Cir. 2010). In any event, the BIA determined that the petitioners had not "meaningfully pursued" their CAT claims. As such, those claims were not exhausted before the BIA and are not properly before this court. See 8 U.S.C. § 1252(d)(1).

- 6 -

When reviewing the agency's findings, "we defer to the agency's factual determinations as long as those determinations are supported by substantial evidence." Ahmed v. Holder, 611 F.3d 90, 94 (1st Cir. 2010); see Ruiz v. Mukasey, 526 F.3d 31, 35 (1st Cir. 2008). Factual determinations that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole" satisfy the substantial evidence standard. Ahmed, 611 F.3d at 94 (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). The agency's factual determinations, then, "must stand unless the record evidence . . . compel[s] a reasonable fact-finder to make a contrary determination." Larios v. Holder, 608 F.3d 105, 107 (1st Cir. 2010); see Elias-Zacarias, 502 U.S. at 481 n.1 ("To reverse the BIA finding we must find that the evidence not only supports that conclusion, but compels it." (emphases in original)). The agency's legal determinations, though, "engender de novo review." Ahmed, 611 F.3d at 94; Ruiz, 526 F.3d at 35.

### III

We begin with the petitioners' asylum claims. To be eligible for a discretionary grant of asylum, an applicant bears the burden of establishing that he is a refugee within the meaning of the Immigration and Nationality Act. See 8 U.S.C. § 1158(b)(1). In pertinent part, the statute defines a refugee as a person "who is unable or unwilling to return to . . . [his country of nationality] because of [past] persecution or a well-founded fear

of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A).

"Persecution is a protean term." Lopez de Hincapie v. Gonzales, 494 F.3d 213, 217 (1st Cir. 2007). "To rise to the level of persecution, the sum of an [applicant's] experiences must add up to more than ordinary harassment, mistreatment, or suffering." Id.; see Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000) (explaining that applicant's "experience must rise above unpleasantness, harassment, and even basic suffering"). "[F]or purposes of establishing the right to asylum, the discriminatory experiences must have reached a fairly high threshold of seriousness, as well as some regularity and frequency." Rebenko, 693 F.3d at 92 (alteration in original) (quoting Alibeaj v. Gonzales, 469 F.3d 188, 191 (1st Cir. 2006)).

A showing of past persecution on account of a statutorily protected ground gives rise to a rebuttable presumption that the applicant has a well-founded fear of future persecution. See Palma-Mazariegos v. Gonzales, 428 F.3d 30, 34 (1st Cir. 2005). But if the applicant fails to establish past persecution, he must independently establish a well-founded fear of future persecution. See id. at 34-35. "A well-founded fear of future persecution must be both subjectively authentic and objectively reasonable." Villafranca, 797 F.3d at 95.

If the requisite degree of persecution is established, the applicant must then go on to prove that the persecution is "on account of" one of the five statutorily protected grounds. 8 U.S.C. § 1101(a)(42)(A). To establish that persecution is "on account of" one of the five statutorily protected grounds, that ground must be "at least one central reason" for the persecution. Id. § 1158(b)(1)(B)(i); see Odei v. Garland, 71 F.4th 75, 79 (1st Cir. 2023). In other words, the applicant must establish that there is a nexus between the harm suffered or feared and the protected ground. See Jimenez-Portillo, 56 F.4th at 166.

Before us, the petitioners have not challenged the agency's finding that their experiences in El Salvador "do not, cumulatively considered, rise to the level of past persecution." Any such claim is, therefore, waived. See Varela-Chavarria v. Garland, 86 F.4th 443, 452 n.7 (1st Cir. 2023) (noting that arguments not advanced in opening brief are deemed waived); see also Ahmed, 611 F.3d at 98 ("[A]ppellate arguments advanced in a perfunctory manner, unaccompanied by citations to relevant authority, are deemed waived.").

This brings us to the agency's determination that the petitioners lacked a well-founded fear of future persecution. In this regard, the petitioners argue that the agency's determination is not supported by substantial evidence for two reasons. First, the petitioners contend that the agency ignored testimonial

- 9 -

evidence. Second, the petitioners contend that the agency failed to follow its own regulations. We address each contention in turn.

With respect to testimonial evidence, the petitioners claim that the agency ignored substantial testimonial evidence concerning the targeting of Cortez due to his membership in a particular social group. Although Cortez "testified to the threats he received from the gangs," the agency — the petitioners assert — "failed to properly evaluate any of this evidence." But the record tells a different tale.

The agency credited Cortez's testimony that the 18-gang "threatened" him "because they wanted him to join [them] and because he worked for a company located in the MS territory." It also credited Mejia's testimony that she was "threatened" for allegedly "passing information to the MS gang." In rendering its decision, the agency noted that the petitioners claimed that they "were threatened on numerous occasions by gang members" but that, in the end, the petitioners "were never harmed physically or detained." Thus, the record demonstrates with conspicuous clarity that the agency did not overlook this evidence. Rather, it relied on the evidence to dispel any suggestion that the threats were likely to be acted upon.

So, too, we are unpersuaded by the petitioners' claim that the agency's failure "to refer to relevant evidence" requires

us to remand.  The petitioners cite no on-point case law that supports this position.[2]

This leaves the petitioners' claim that the agency transgressed its own regulations by failing to determine whether "a reasonable person in like circumstances would not fear persecution."  But — as the respondent points out — the agency was not required to make such a determination because it had already found that the petitioners had failed to show a nexus between a statutorily protected ground and the feared persecution.  "The agency's no-nexus finding was outcome-determinative and it is black-letter law that 'agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.'"  Pazine v. Garland, 115 F.4th 53, 64 (1st Cir. 2024) (quoting INS v. Bagamasbad, 429 U.S. 24, 25 (1976)).

We add, moreover, that the agency's no-nexus finding was supported by substantial evidence.  And the agency reasonably determined that no nexus had been established between the petitioners' fear of gang violence and a protected ground because

---

[2] In the Third Circuit case cited by the petitioners, the court remanded a petitioner's case to the agency because it was unclear that the agency had considered "important material evidence going to the heart of [the petitioner's] claim." Sotto v. INS, 748 F.2d 832, 837 (3d Cir. 1984).  Here, however, the petitioners have not identified any relevant evidence — much less any material evidence — disregarded by the agency.  As we already have explained, the agency considered the gang threats but did not attach to them the weight suggested by the petitioners.

- 11 -

that fear was generalized. See de Abarca v. Holder, 757 F.3d 334, 337 (1st Cir. 2014) (noting that "a generalized fear [of a gang's reputation] cannot be the basis for a claim of feared future persecution"); Vasili v. Holder, 732 F.3d 83, 91 (1st Cir. 2013) ("General criminal activity is not evidence of a well-founded fear of . . . persecution."). Because the record does not compel a contrary conclusion, the agency's finding must stand.

In a variation on this theme, the petitioners claim that the agency did not follow its own regulations because "it did not examine the pattern and practice of persecution of similarly situated persons." This claim fails because the agency's no-nexus finding, which was supported by substantial evidence for the reasons just explained, was outcome-determinative.

The petitioners have one last shot in their sling. They attempt to challenge the agency's determination that they "ha[d] not articulated a cognizable particular social group upon which they c[ould] establish a well-founded fear of future persecution." They describe this "social group" in a variety of ways, such as "persons recruited to spy on a rival gang in El Salvador," "person[s] intimidated/recruited to pass on information to a rival gang," "persons targeted by the gangs for collaborating against rival gangs," and "El Salvadorans caught between rival gangs and accused of working with the rival gang based on their work and home locations where the government will not protect them from the

persecutor."  We need not address whether each of these particular social groups is cognizable because — as explained above — a generalized fear of gang violence cannot be the basis for a claim of future persecution, regardless of the particular social group that is asserted.

## IV

We need not tarry over the petitioners' withholding-of-removal claims.  To be eligible for withholding of removal, an applicant "must establish a clear probability that, if returned to his homeland, he will be persecuted on account of a statutorily protected ground."  Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021).  This clear probability standard is more stringent than the counterpart asylum standard.  See Pineda-Maldonado v. Garland, 91 F.4th 76, 82 (1st Cir. 2024); Villalta-Martinez v. Sessions, 882 F.3d 20, 26 (1st Cir. 2018).  Consequently, an applicant who fails to establish eligibility for asylum under the former standard necessarily fails to establish eligibility for withholding of removal.  See, e.g., de Abarca, 757 F.3d at 337-38; Singh, 543 F.3d at 7.  So it is here.

## V

We need go no further.  For the reasons elucidated above, the petition for judicial review is

**Denied**.

- 13 -